UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA RAJAPAKSE,

       Plaintiff,

vs.                                              Case No. 2:16-cv-13144

CREDIT ACCEPTANCE
CORPORATION,

       Defendant.

---

## DEFENDANT CREDIT ACCEPTANCE CORPORATION'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR, IN THE ALTERNATIVE, TO STAY ALL PROCEEDINGS IN THIS ACTION

Defendant Credit Acceptance Corporation ("Credit Acceptance"), by and through its attorneys, King and Murray, PLLC, moves to compel arbitration and to dismiss, or in the alternative, to stay all proceedings in this action until arbitration is completed. This relief is proper because Plaintiff Samantha Rajapakse ("Plaintiff") signed a contract that contained a conspicuous, valid, and mandatory "Agreement to Arbitrate." In support of its Motion, Credit Acceptance relies on the facts and law presented in the attached Memorandum in Support.

1

In accordance with Local Rule 7.1(a), Credit Acceptance's counsel contacted Plaintiff on September 30, 2016, to obtain concurrence in this Motion. Concurrence was not obtained, and therefore, it is necessary to bring this Motion.

Respectfully submitted,

KING and MURRAY PLLC

By: */s/ Stephen W. King*
Stephen W. King (P56456)
Attorneys for Defendant Credit
Acceptance Corporation
355 S. Old Woodward, Suite 100
Birmingham, MI 48009
(248) 792-2398
sking@kingandmurray.com

Dated: October 6, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA RAJAPAKSE,

      Plaintiff,

vs.                                        Case No. 2:16-cv-13144

CREDIT ACCEPTANCE
CORPORATION,

      Defendant.

---

## MEMORANDUM IN SUPPORT

## ISSUES PRESENTED

1.　　Whether Plaintiff entered into a valid agreement to arbitrate with Credit Acceptance?

2.　　Whether the scope of the "Agreement to Arbitrate" encompasses Plaintiff's claims in this action?

3.　　Whether this action should be dismissed with prejudice, or in the alternative, stayed pending binding arbitration?

Credit Acceptance submits that this Court should answer each of these questions in the affirmative, compel arbitration, and dismiss Plaintiff's Complaint, or in the alternative, stay all proceedings in this action until arbitration is completed.

## **CONTROLLING AND MOST APPROPRIATE AUTHORITY**

Credit Acceptance relies on the Federal Arbitration Act, 9 U.S.C. §§ 1-16 and the authorities cited in its Memorandum in Support including, without limitation, the following cases: (1) *Garcia v. Weltman, Weinberg & Reis Co., et al.*, 2014 U.S. Dist. LEXIS 59825 (E.D. Mich. Apr. 30, 2014); (2) *Credit Acceptance Corp v. Davisson*, 644 F. Supp. 2d 948 (N.D. Ohio 2009); (3) *Copeland v. Katz*, 2005 WL 3163296 (E.D. Mich. Nov. 28, 2005); (4) *Anderson v. Credit Acceptance Corp.*, 2015 U.S. Dist. LEXIS 70149 (W.D. Mich. June 1, 2015); and (5) *Lee v. Credit Acceptance Corp.*, 2015 U.S. Dist. LEXIS 153035 (W.D. Wis. Nov. 12, 2015).

1.    **INTRODUCTION**

Plaintiff entered into a Retail Installment Contract ("RIC") with 1 Stop Auto Sales (the "Dealership") for the purchase a used car in January 2014. The RIC was thereafter assigned by the Dealership to Credit Acceptance. Importantly, the RIC contains a conspicuous, valid and mandatory Agreement to Arbitrate. Soon after entering into the RIC, Plaintiff defaulted by failing to make all of the required monthly installment payments on her car. Nevertheless, Plaintiff has now filed suit against Credit Acceptance for alleged violations of state and federal law. [Dkt. #1.] Pursuant to the unambiguous language of the RIC, Credit Acceptance now moves the Court to compel arbitration and to dismiss this lawsuit with prejudice, or in the alternative, to stay all proceedings in this action until arbitration is completed.[1]

2.    **BACKGROUND**

On January 7, 2014, Plaintiff entered into the RIC with the Dealership for the purchase of a 2007 Chevrolet Trailblazer. *See* Exhibit 1 – Affidavit of Kimberly Cavazos ("Cavazos Aff."). Pursuant to the RIC, Plaintiff was to make 48 monthly-installment payments of $361.13. (Cavazos Aff., Ex. A.) The RIC was assigned to Credit Acceptance, who is explicitly designated as "Assignee" therein. *Id*. The RIC provides, in pertinent part, as follows:

---

[1] Credit Acceptance denies that Plaintiff's claims have any merit whatsoever, and reserves and does not waive, any and all defenses to Plaintiff's claims.

1.

NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth on page 4 of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD – SUITE 3000, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506. *Id. at pg. 2.*

Importantly, the first page of the RIC contains two conspicuous notices advising Plaintiff to read the entire RIC, both of which emphasize the existence of the Agreement to Arbitrate. *Id. at pg. 1.* These two notices provide:

**ARBITRATION NOTICE**: PLEASE SEE PAGE 4 OF THIS CONTRACT FOR INFORMATION REGARDING THE **AGREEMENT TO ARBITRATE** CONTAINED IN THIS CONTRACT.

**ADDITIONAL TERMS AND CONDITIONS**: THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE **AGREEMENT TO ARBITRATE** SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE. *Id.*

These notices clearly apprised Plaintiff of the Agreement to Arbitrate. Below these notices is the following language in all bold type: "NOTICE TO BUYER: 1. Do not sign this Contract in blank. 2. You are entitled to 1 true copy of the Contract You sign without charge. 3. Keep it to protect Your legal rights." *Id. at pg. 2.* Plaintiff's signature is directly below this notice. Also, below the aforementioned notice and Plaintiff's signature is the following language in bold type: "**You agree to the terms of this Contract and acknowledge that You have**

2.

received a copy of this Contract with all blanks filled in and that You have read it and understand it." (Original emphasis.) *Id.*

The Agreement to Arbitrate, which is on pages 4-5 of the RIC, sets forth the terms for the resolution of "Disputes" between Plaintiff and Credit Acceptance, and provides, in pertinent part, as follows:

> A "Dispute" is any controversy or claim between You and us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based in tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.
>
> *****
>
> Either You or we may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. . . . A Dispute shall be fully resolved by binding arbitration.
>
> If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute.
>
> *****
>
> This Agreement to Arbitrate is governed by the FAA and not by any state arbitration law. *Id. at pgs. 4-5.*

In sum, the Agreement to Arbitrate provides as follows: Plaintiff or Credit Acceptance may elect to arbitrate "Disputes" (which again, "have the broadest meaning possible") either before or after litigation has begun; if and when

3.

arbitration is elected by either Plaintiff or Credit Acceptance, then there is no right to pursue Disputes in this (or any) Court; and arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. *Id.*

The Agreement to Arbitrate also contains two key provisions, which are designed to protect consumers such as Plaintiff. First, the arbitration will take place near the place where the RIC was entered into (*i.e.*, "[a]rbitration will take place near where You signed this Contract") and not necessarily in Southfield, Michigan where Credit Acceptance headquarters are located. *Id.*

Second, and perhaps most importantly, Plaintiff had the absolute right to reject the Agreement to Arbitrate, with absolutely no consequence to the remaining terms of the RIC. Specifically, the Agreement to Arbitrate provides:

> <u>Your Right to Reject</u>: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract. *Id.*

Plaintiff did not exercise this right to reject the Agreement to Arbitrate, as Credit Acceptance did not receive any such notice from Plaintiff. (Cavazos Aff.)

As such, Credit Acceptance now seeks to enforce its express contractual right to compel arbitration.

## 3.    ARGUMENT

Plaintiff entered into a RIC, which includes an Agreement to Arbitrate requiring, among other things, that "[e]ither You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes . . . brought later in the lawsuit. . . . A Dispute shall be fully resolved by binding arbitration." (Cavazos Aff., Ex. A.) Plaintiff initiated this lawsuit requesting that the Court adjudicate her claims against Credit Acceptance, which is within the scope of the binding RIC and the Agreement to Arbitrate therein. As a result, Credit Acceptance moves this Court to compel the parties to arbitration and to dismiss this action with prejudice, or in the alternative, to stay all proceedings in this action, pending completion of the arbitration.

### A.    There is a strong federal policy favoring the enforcement of arbitration agreements.

Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements. *Allied-Bruce Terminix Cos v. Dobson*, 513 U.S. 265, 270 (1995). With its enactment, Congress placed arbitration agreements "upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). As such, "generalized attacks on arbitration,"

5.

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991), based on the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," *Rodriguez de Quijas v. Shearson/Am Express, Inc.*, 490 U.S. 477, 481 (1989), have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Rodriguez de Quijas*, 490 U.S. at 481. In short, arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress, with its enactment of the FAA, and the federal courts, through their interpretation of the FAA, have together created a strong federal policy favoring the enforcement of arbitration agreements. This strong federal policy requires federal courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

Moreover, federal law dictates that arbitration agreements are to be construed as broadly as possible, and any doubts should be resolved in favor of arbitration. *See e.g., Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ("[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-577 (6th Cir 2003). Further, the FAA "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that

6.

arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion* ("*Concepcion*"), 131 S. Ct. 1740, 1745 (2011). "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989); *see also Stolt-Nielsen SA v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605, 622 (2010)." *Concepcion*, 131 S. Ct. at 1748. This language is in step with the Agreement to Arbitrate in the present case, which provides, that "[a] 'Dispute' is any controversy or claim between You and Us arising out of or in any way related to this Contract . . . ." (Cavazos Aff., Ex. A at p.5).

In analyzing a similar situation (*i.e.*, a retail installment contract was assigned to Credit Acceptance by an automobile dealership and the consumer subsequently initiated a lawsuit against Credit Acceptance in federal court) and agreement to arbitrate that was contained in the retail installment contract, the United States District Court for the Northern District of Ohio stated:

> [w]hen faced with a broad arbitration agreement, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. . . . Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators. *Credit Acceptance Corp v. Davisson*, 644 F. Supp. 2d 948, 959 (ND Ohio 2009) (quoting S*olvay Pharms. v. Duramed Pharms,*

7.

*Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006)). (Original emphasis.)

The *Davisson* court noted that because the Credit Acceptance arbitration agreement "provides for arbitration of any dispute, it is broad in scope." (Original emphasis.) *Id*. The court, therefore, held that Davisson's claims for violation of consumer statutes and for conversion and trespass to chattel "clearly fall within the Contract's definition of 'Dispute,'" and thus "all of the parties' claims are arbitrable." *Id*. at 960.

More recently, and with respect to another similar case and Credit Acceptance's agreement to arbitrate, Judge Rosen in the Eastern District of Michigan noted that "the Court easily concludes that the parties have a valid arbitration agreement" and that "given the breadth of the Agreement to Arbitrate, [Plaintiff] cannot" raise any argument as to why her claims (violation of federal and state consumer-protection statutes) would be unsuitable for arbitration. *Garcia v. Weltman, Weinberg & Reis Co, et al*. 2014 U.S. Dist. LEXIS 59825 (E.D. Mich. Apr. 30, 2014). *See* Ex. 2.[2] *Also see, Copeland v. Katz*, 2005 WL 3163296 (E.D. Mich. Nov. 28, 2005) (holding that a substantially-similar Credit Acceptance arbitration agreement was not unconscionable and enforceable); *Anderson v. Credit Acceptance Corp*., 2015 U.S. Dist. LEXIS 70149 (W.D. Mich. June 1,

---

[2] All unpublished case law will be attached in alphabetical order (by plaintiff's last name) as Exhibit 2.

2015) ("Because there was a valid agreement to arbitrate, and the dispute at issue falls within the substantive scope of that agreement, Plaintiff must submit her claims to arbitration"); *Lee v. Credit Acceptance Corp.*, 2015 U.S. Dist. LEXIS 153035 (W.D. Wis. Nov. 12, 2015) (". . . this is a straightforward case. First . . . there is a written agreement to arbitrate. Second . . . the parties' dispute falls within the scope of their agreement to arbitrate. Third, Lee has refused to arbitrate. These are the three prerequisites for compelling arbitration, and they are present in this case."). The Agreement to Arbitrate in the instant case should likewise be enforced.

It is against the backdrop of this strong federal policy in favor of arbitration that the Court must evaluate the merits of Credit Acceptance's pending motion. Here, the Agreement to Arbitrate is unambiguous, enforceable, and mandatory, and as such, Credit Acceptance's motion should be granted.

**B.    The prerequisites established by the FAA for the mandatory enforcement of arbitration agreements are satisfied in the present lawsuit.**

The FAA specifically provides that arbitration agreements are enforceable according to their terms:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out

9.

> of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.

That is, the Court must compel arbitration if (1) there is a written agreement to arbitrate, (2) the underlying transaction involves interstate commerce, and (3) the substantive claims fall within the arbitration agreement. 9 U.S.C. § 2. Each of these three prerequisites is satisfied in this case. First, it is beyond dispute that the Agreement to Arbitrate here is in writing. (Cavazos Aff., Ex. A at p.5). Thus, the FAA's first prerequisite for enforcement of an arbitration agreement is satisfied.

Second, the transaction in this case meets the commerce requirement. The Agreement to Arbitrate specifically provides that: "[i]t is expressly agreed that this Contract evidences a transaction in interstate commerce." *Id.* Courts consider such express language evidence of the satisfaction of the interstate commerce requirement. *See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) (courts must "rigorously enforce [arbitration] agreements according to their terms"). Because "[a]rbitration under the [FAA] is a matter of consent, not coercion," and because "parties are generally free to structure their arbitration agreements as they see fit," courts must "give effect to the contractual rights and expectations of the parties." *Id.* Here, by signing the RIC, Plaintiff agreed that the transaction involved interstate commerce under the FAA. In addition, Plaintiff purchased her car in Tennessee and received indirect financing from a Michigan

10.

company, Credit Acceptance. For these reasons, the second prerequisite for enforcement of the parties' arbitration agreement is satisfied in the present action.

Third, the final inquiry under Section 2 of the FAA is whether the claims asserted fall within the scope of the respective arbitration agreements. As an initial matter, "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25. The Supreme Court dictates that a presumption of arbitrability exists where a contract contains an Agreement to Arbitrate, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the Agreement to Arbitrate is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986). The presumption in favor of arbitrability "is particularly applicable where the [arbitration] clause is. . . broad," *id.*, as it is in this case. Ultimately, this is a question of "arbitrability."

The arbitrability of a dispute "must be addressed with a healthy regard for the federal policy favoring arbitration . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

U.S. 614, 626 (1985). Further, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration agreement itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc.,* 489 U.S. at 476. In fact, the presumption of arbitrability, created by the mere existence of an arbitration agreement, can only be overcome if "it may be said with positive assurance that the arbitration agreement is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960)).

Here, Plaintiff's claims against Credit Acceptance fall squarely within the Agreement to Arbitrate. Again, it provides, in pertinent part, that, "[a] 'Dispute' is any controversy or claim between You and Us arising out of or in any way related to this Contract . . . ." (Cavazos Aff., Ex. A). The Plaintiff's claims for violation of federal law (i.e., the Fair Debt Collection Practices Act) are "Disputes" clearly falling within the ambit of the Agreement to Arbitrate because the claims are "arising out of" and "in any way related" to the RIC. (Dkt. #1.) That is, without the RIC, Plaintiff would have no connection to Credit Acceptance whatsoever, and thus, no opportunity to bring the instant lawsuit. The third and final prerequisite for mandatory enforcement of the parties' arbitration agreement is satisfied.

12.

At this point, the Court should compel binding arbitration because the FAA prerequisites are established under the facts, and the Plaintiff cannot maintain any challenge to the Agreement to Arbitrate. Indeed, it is a plaintiff who typically bears the burden of any challenge to the validity of the arbitration agreement. *See Battle v. Nissan Motor Acceptance Corp.*, No. 05-C-0669, 2007 WL 1095681 (E.D. Wis. Mar. 9, 2006) (noting that the party resisting arbitration bears that burden of establishing the invalidity of the arbitration agreement). Courts may only invalidate arbitration agreements based upon generally applicable contract defenses. *See* 9 U.S.C. § 2; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). A court should uphold and enforce an arbitration agreement even if an arbitrator may later hold the remainder of the contract invalid. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 (2006) ("It is true . . . that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void"). Moreover, even when using doctrines of general applicability in examining an arbitration agreement, such as unconscionability, courts are not permitted to employ those doctrines in a manner that would subject arbitration agreements to special scrutiny.[3]

---

[3] *See, e.g., Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements . . . .");

13.

Under this heightened standard, Plaintiff cannot overcome the validity of the Agreement to Arbitrate. Indeed, both identical and similar Credit Acceptance Agreement to Arbitrates have been enforced by other courts and all challenges have been rejected. *See e.g.*, *Credit Acceptance Corp v. Davisson*, 644 F. Supp. 2d 948 (N.D. Ohio 2009); *Garcia v. Weltman, Weinberg & Reis Co, et al.* 2014 U.S. Dist. LEXIS 59825 (E.D. Mich. Apr. 30, 2014); *Copeland v. Katz*, 2005 WL 3163296 (E.D. Mich. Nov. 28, 2005); *Anderson v. Credit Acceptance Corp.*, 2015 U.S. Dist. LEXIS 70149 (W.D. Mich. June 1, 2015); and *Lee v. Credit Acceptance Corp.*, 2015 U.S. Dist. LEXIS 153035 (W.D. Wis. Nov. 12, 2015).

**C.    Because Plaintiff's claims are subject to arbitration, this action should be dismissed with prejudice, or in the alternative, stayed pending the final outcome of arbitration.**

Because Plaintiff's claims are subject to arbitration, Credit Acceptance requests that this action be dismissed with prejudice. "Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed." *Hensel v. Cargill*, 1999 WL 993775 (6th Cir. Oct 19, 1999); *see also Hagan v. Greenpoint Credit Corp.*, 2007 WL 2258866 (E.D. Ky. Aug. 3, 2007) ("[A]s all Plaintiff's claims must be referred to arbitration,

---

*Concepcion*, 131 S. Ct. at 1748 ("Although § 2's savings clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives").

Plaintiff's Complaint is DISMISSED."); *Pellow v. Daimler Chrysler Services North America, LLC*, 2006 WL 2540947 (E.D. Mich. Aug. 31, 2006) ("Because Plaintiff's sole claim is subject to arbitration, the Court hereby dismisses this case."); *Manuel v. Honda R & D Americas, Inc.*, 175 F. Supp. 2d 987 (S.D. Ohio 2001) ("For the foregoing reasons, Defendant's Motion to Dismiss, on the ground that the parties had previously agreed to arbitrate each of Plaintiff's claims, is SUSTAINED. Judgment will be entered in favor of the Defendants and against the Plaintiff, dismissing the captioned cause, with prejudice.").

In the alternative, should the Court decide not to dismiss this action or refer only certain of Plaintiff's claims to arbitration, Credit Acceptance requests that the Court stay the proceedings in this action, including discovery, pending the final outcome of arbitration. *See Hensel*, 1999 WL 993775, at *4 ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is <u>mandatory</u>.") (emphasis added); 9 U.S.C. § 3 (providing that "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . <u>shall</u> on application of one of the parties stay the trial of the action . . . .") (Emphasis added.) This provision is "mandatory" and the Court generally lacks discretion to deny the request to stay.

15.

4.    **CONCLUSION**

For the foregoing reasons, Defendant Credit Acceptance Corporation respectfully requests that the Court grant its Motion and compel the parties to arbitrate their dispute, with the duty on Plaintiff Samantha Rajapakse to initiate the arbitration process. Furthermore, if the Court grants the motion, then Defendant Credit Acceptance Corporation also requests the Court to dismiss this action with prejudice, or in the alternative, stay all proceedings in this action pending the final outcome of arbitration.

Respectfully submitted,

KING and MURRAY PLLC

By: */s/ Stephen W. King*
Stephen W. King (P56456)
Attorneys for Defendant Credit
Acceptance Corporation
355 S. Old Woodward, Suite 100
Birmingham, MI 48009
(248) 792-2398
sking@kingandmurray.com

Dated: October 6, 2016

16.

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to all counsel of record.

By: */s/ Cathy Conti*
Cathy Conti
355 S. Old Woodward, Suite 100
Birmingham, MI 48009
(248) 792-2398
cconti@lennonlawpllc.com

# EXHIBIT

# 1

0027124456-1

**RETAIL INSTALLMENT CONTRACT**

ACCOUNT # 77067517                                                                          LOT # 5KF

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| SAMANTHA  RAJARPAKSE<br>1435 RAGAN ST<br>MEMPHIS, TN 38106 | N/A | 1 STOP AUTO SALES<br>1005 EAST  BROOKS RD<br>MEMPHIS, TN 38116 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown below as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under this Retail Installment Contract ("Contract"), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures below. You also agree to the terms and conditions below (including the Truth in Lending Disclosures) and on the additional pages of this Contract. The Annual Percentage Rate may be negotiable with Us.

| | Year and Make | Model and Body Style | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2007 Chevrolet | Trailblazer 4D Utility | tan | 1GNDS13S672256146 | 94,998 |

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit, including Your down payment of |
|---|---|---|---|---|
| 24.99 % | $ 6,440.88 | $ 10,893.36 | $ 17,334.24 | $ 2,800.00 is<br>$ 20,134.24 |

Payment Schedule: Your payment schedule will be.

| No. of Payments | Amount of Payments | When Payments Are **Due** |
|---|---|---|
| 48 | $ 361.13 | February 07, 2014 and same date of each following month. |

**Security:** You are giving a security interest in the goods or Vehicle being purchased.
**Late Charge:** If a payment is more than 10 days late, You will be charged 5% of the payment.
**Prepayment:** If You pay off early, You may be entitled to a refund of part of the Finance Charge.
**Additional Information:** Please read this Contract for any additional information about nonpayment, default and any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.**

**PROPERTY INSURANCE:** You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US. The collision coverage deductible may not exceed $500.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**USED CAR BUYERS GUIDE.** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.
Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**ARBITRATION NOTICE:** PLEASE SEE PAGE 4 OF THIS CONTRACT FOR INFORMATION REGARDING THE **ARBITRATION CLAUSE** CONTAINED IN THIS CONTRACT.
**ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE **ARBITRATION CLAUSE** SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

TENNESSEE CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

*Original*

PAGE 1 of 5

Buyer's Initials _____
Buyer's Initials _____

0027124456-2

## ITEMIZATION OF AMOUNT FINANCED

1. **Cash Price** (including accessories and improvements to the Vehicle) ........................................ $ 10,998.00 (1)
2. Sales Tax .............................................................................................................................. $ 893.86 (2)

3. Down-Payment Calculation:    **Cash Down Payment** .............................. $ 2,800.00 (A)
   Trade-In Description:    Gross Trade-In .............. $ N/A (B)
   Make: N/A
   Model N/A    Payoff Made by Seller  $ N/A (C)
   Net Trade-In (if negative number, insert "0" in line 3(D) and itemize difference in 5(E) below) (B-C) $ 0.00 (D)
   Total Down Payment ....................................... (A + D) $ 2,800.00 (3)

4. Unpaid Balance of Cash Price (1+ 2 less 3) .......................................................................... $ 9,091.86 (4)
5. Other Charges Including Amounts Paid to Others on Your Behalf:
   *(NOTICE: A portion of these charges may be paid to or retained by Us.)
   A.  *Cost of Required Physical Damage Insurance Paid to Insurance Company  ................ $ N/A (A)
   B.  *Cost of Optional Extended Warranty or Service Contract Paid to the Company named below....... $ 1,380.00 (B)
   C.  Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest ...... $ N/A (C)
   D.  Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration ................. $ 122.50 (D)
       Other Charges (Seller must identify who will receive payment and describe purpose)
   E.  to N/A _____ for lien or lease payoff .................................. $ N/A (E)
   F.  *to N/A _____ for Optional GAP Protection ........................ $ N/A (F)
   G.  *to THE SELLER _____ for DOC FEE _____ $ 299.00 (G)
   H.  *to N/A _____ for N/A _____ $ N/A (H)
   I.  *to N/A _____ for N/A _____ $ N/A (I)
   J.  *to N/A _____ for N/A _____ $ N/A (J)
   Total of Other Charges and Amounts Paid to Others on Your Behalf ................................................ $ 1,801.50 (5)
6. Less Prepaid Finance Charge  ....................................................................................................... $ N/A (6)
7. Amount Financed - Unpaid Balance (4 + 5 less 6) .......................................................................... $ 10,893.36 (7)

---

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by signing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price $ 1,380.00  Term: 24 Mos. \ 24000 Miles  Company. First Automotive Service Corp

Buyer's Signature    Date 01/07/2014    Buyer's Signature    Date

**GAP PROTECTION: Optional Guaranteed Auto Protection (GAP)** is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 5F of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost: $ N/A    Term: N/A    Provider: N/A

Buyer's Signature    Date    Buyer's Signature    Date

---

**NOTICE TO BUYER:** 1. Do not sign this Contract in blank. 2. You are entitled to 1 true copy of the Contract You sign without charge. 3. Keep it to protect Your legal rights.

You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.

Buyer's Signature:    Buyer's Signature: x

Seller. 1 STOP AUTO SALES    By.    Title:
This Contract is signed by the Seller and Buyer(s) hereto this 7th day of January 2014

**NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation** in accordance with the terms and conditions set forth on page 4 of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD-SUITE 3000, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller. 1 STOP AUTO SALES    By.    Title:

TENNESSEE CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.    PAGE 2 of 5

0027124456-3

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle, 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Bad Check Charge.** You agree to pay Us a bad check charge of $30 (or such other amount permitted by applicable law) for any check or like instrument given by You to Us that is returned by Your bank because of insufficient funds or because Your bank account was closed.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing

**Your Other Promises to Us.** You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Prepayment.** You have the right to prepay Your account balance early without a penalty. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or if You paid Us more than the amount owed to Us under this Contract, We will refund it to You. We will retain a $15.00 acquisition fee before calculating any refund credit. We will not credit or refund amounts less than $1.00.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the Vehicle for the term of this Contract. At any time during the term of this Contract, if You do not have physical damage insurance which covers both the interest of You and Us in the Vehicle, then We may buy it for You. If We do not buy physical damage insurance which covers both interests in the Vehicle, We may, if We decide, buy insurance which covers only our interest.

We are under no obligation to buy any insurance, but may do so if We desire. If We buy either of these coverages, We will let You know what type it is and the charge You must pay. The amount You must pay will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on this Contract. You agree to pay the amount and finance charge in equal installments along with the payments shown on the Payment Schedule.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment

**Optional Insurance, Maintenance or Service Contracts.** This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refund on optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

**Starter Interruption Device and GPS.** You understand and agree that if You are in default, We may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow Us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default in order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

TENNESSEE CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 3 of 5

Buyer's Initials _____

Buyer's Initials _____

0027124456-4

## ADDITIONAL TERMS AND CONDITIONS

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.

**Sale of the Repossessed Vehicle.** Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected in our records, in a reasonable period before the date of the intended sale or transfer (or such other period of time as is required by law). If the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of the sale will be figured this way: Any charges for taking, holding, preparing for sale, and selling the Vehicle, and any attorney fees and court costs, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for it. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

**Collection Costs.** You will pay any collection costs We incur relating to Your default. If We hire an attorney to collect what You owe and the attorney is not our salaried employee, You will also pay the attorney's reasonable fees and any court costs as permitted by law.

**Delay in Enforcing Rights and Changes of this Contract.** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others. Any change in the terms of this Contract must be in writing and signed by Us. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable

> **WARRANTIES SELLER DISCLAIMS. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY WARRANTIES AND THAT THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED BY THE SELLER, COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT. THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT MAY BE PROVIDED BY THE VEHICLE MANUFACTURER.**

**Interest After Maturity.** You further agree to pay interest at the highest rate permitted by applicable law, on any amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means the earlier of the date Your final payment is due or the date We accelerate the Contract

**Judgment Rate.** Interest on any judgment awarded on this Contract will be at the Annual Percentage Rate stated on page 1 of this Contract, or at the highest rate permitted by applicable law.

**Governing Law.** The terms of this Contract are governed by the law of the state of the Seller's address shown on page 1 of this Contract, except to the extent preempted by applicable federal law.

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

## AGREEMENT TO ARBITRATE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.

**Your Right to Reject:** If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

TENNESSEE CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 4 of 5

Buyer's Initials

Buyer's Initials

0027124456-5

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute  Any Dispute Notice to You will be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You).  Any Dispute Notice You send must give Your Account Number, telephone number and address  Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit.  If You or We elect to arbitrate a Dispute, this Arbitration Clause applies.  A Dispute shall be fully resolved by binding arbitration  Judgment on the arbitration award may be entered in any court with jurisdiction.  All statutes of limitation that otherwise would apply to an action brought in court will apply in arbitration.  The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs

If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute.  In addition, if You or We elect to arbitrate a Dispute, (a) neither You nor We may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant or class member; (b) neither You nor We may act as a private attorney general in court or in arbitration; (c) Disputes brought by or against You may not be joined or consolidated with Disputes brought by or against any other person; and (d) the arbitrator shall have no power or authority to conduct a class-wide arbitration, private attorney general arbitration or joined or consolidated arbitration (this sentence including subparts a through d hereof is referred to in this Arbitration Clause as the "Class Action Waiver").  In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause,  whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and Us.

Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract.  If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause.  In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict.  You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice.  The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org.  If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator.  We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of any such fees.  We will bear the expense of our attorneys, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring.  You will bear the expense of Your attorneys, experts and witnesses if We prevail in an arbitration.  However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced.  Also, We will bear any fees if applicable law requires Us to.  The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You  Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. Seq. ("FAA").  However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party.  The decision of the panel shall be by majority vote.  Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken  The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause that describes who will bear the costs for the initial proceeding before a single arbitrator

It is expressly agreed that this Contract evidences a transaction in interstate commerce.  This Arbitration Clause is governed by the FAA and not by any state arbitration law.

TENNESSEE CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 5 of 5

Buyer's Initials _____

Buyer's Initials _____

# Credit Acceptance
*We change lives!*

## Transaction Report     ( Collectible transactions )

Date: 09/22/16
Page: 1 of 3

**Account #:** 77067517
**Customer:** RAJARPAESE, SAMANTHA

**Address:** 1455 Ragan St
**City:** Memphis
**State:** TN     **Zip:** 381066101

| Date | Description | Sub Type | Reference | Agent | Entered By | Amount | Balance/Total |
|---|---|---|---|---|---|---|---|
| 01/08/14 | NEW CONTRACT | | | | LSS | $17,334.24 | $17,334.24 |
| 02/13/14 | DIRECT PAYMENT | WU WEB DEBIT CARD | 16181305 | | WU_PROXY | ($365.00) | $16,969.24 |
| 03/14/14 | DIRECT PAYMENT | WU IVR ATM | 16623029 | | WU_PROXY | ($361.13) | $16,608.11 |
| 04/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $16,626.17 |
| 04/28/14 | DIRECT PAYMENT | WU COLLECTOR ACH RE | 17231338 | | OPERATOR | ($362.00) | $16,264.17 |
| 05/07/14 | TRANSACTION CORRECTION | | | | WU_PROXY | $362.00 | $16,626.17 |
| 05/10/14 | BANK WIRE TRANSFER | MONEY GRAM | 88379080 | | OPERATOR | ($350.00) | $16,276.17 |
| 05/17/14 | BANK WIRE TRANSFER | MONEY GRAM | 61107577 | | OPERATOR | ($25.00) | $16,251.17 |
| 05/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $16,269.23 |
| 05/28/14 | DIRECT PAYMENT | WU COLLECTOR ACH RE | 17647653 | | OPERATOR | ($362.00) | $15,907.23 |
| 06/05/14 | BANK WIRE TRANSFER | MONEY GRAM | 19771150 | | OPERATOR | ($170.00) | $15,737.23 |
| 06/06/14 | TRANSACTION CORRECTION | | | | WU_PROXY | $362.00 | $16,099.23 |
| 06/09/14 | BANK WIRE TRANSFER | MONEY GRAM | 63457535 | | OPERATOR | ($209.00) | $15,890.23 |
| 06/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $15,908.29 |
| 06/28/14 | DIRECT PAYMENT | WU COLLECTOR ACH RE | 18099824 | | OPERATOR | ($362.00) | $15,546.29 |
| 06/30/14 | BANK WIRE TRANSFER | MONEY GRAM | 44255868 | | OPERATOR | ($150.00) | $15,396.29 |
| 07/03/14 | TRANSACTION CORRECTION | | | | WU_PROXY | $362.00 | $15,758.29 |
| 07/04/14 | BANK WIRE TRANSFER | MONEY GRAM | 28475944 | | OPERATOR | ($230.00) | $15,528.29 |
| 07/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $15,546.35 |
| 07/30/14 | BANK WIRE TRANSFER | MONEY GRAM | 85435523 | | OPERATOR | ($240.00) | $15,306.35 |
| 08/01/14 | BANK WIRE TRANSFER | MONEY GRAM | 34869819 | | OPERATOR | ($140.00) | $15,166.35 |
| 08/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $15,184.41 |
| 08/30/14 | BANK WIRE TRANSFER | MONEY GRAM | 81881452 | | OPERATOR | ($379.19) | $14,805.22 |
| 09/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $14,823.28 |
| 09/30/14 | BANK WIRE TRANSFER | MONEY GRAM | 82323872 | | OPERATOR | ($380.00) | $14,443.28 |
| 10/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $14,461.34 |
| 11/01/14 | DIRECT PAYMENT | WU WEB ATM | 19921769 | | WU_PROXY | ($377.00) | $14,084.34 |
| 11/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $14,102.40 |
| 11/30/14 | BANK WIRE TRANSFER | MONEY GRAM | 76007081 | | OPERATOR | ($200.00) | $13,902.40 |
| 12/01/14 | BANK WIRE TRANSFER | MONEY GRAM | 94765745 | | OPERATOR | ($175.00) | $13,727.40 |
| 12/18/14 | LATE FEE | | | | OPERATOR | $18.06 | $13,745.46 |
| 01/03/15 | BANK WIRE TRANSFER | MONEY GRAM | 28999255 | | OPERATOR | ($200.00) | $13,545.46 |
| 01/04/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 20852352 | | WU_PROXY | ($190.00) | $13,355.46 |
| 01/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $13,373.52 |
| 01/28/15 | DIRECT PAYMENT | WU WEB ATM | 21192985 | | WU_PROXY | ($380.00) | $12,993.52 |
| 02/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $13,011.58 |
| 02/24/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 21627630 | | WU_PROXY | ($374.00) | $12,637.58 |
| 03/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $12,655.64 |
| 03/22/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 22059937 | | WU_PROXY | ($250.00) | $12,405.64 |
| 03/29/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0438024320005 | | WU_PROXY | ($130.00) | $12,275.64 |
| 04/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $12,293.70 |
| 05/01/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 22686414 | | WU_PROXY | ($210.00) | $12,083.70 |
| 05/03/15 | | | | | WU_PROXY | | |

(TRANS.REP)

# Transaction Report    ( Collectible transactions )

**Credit Acceptance**
*We change lives!*

Date: 09/22/16
Page:    2 of 3

**Account #:** 77067517
**Customer:** RAJAPAKSE, SAMANTHA

**Address:** 1435 Ragan St
**City:** Memphis
**State:** TN    **Zip:** 381066101

| Date | Description | Sub Type | Reference | Agent | Entered By | Amount | Balance/Total |
|------|-------------|----------|-----------|-------|------------|--------|---------------|
| 05/03/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0438024670006 | | WU_PROXY | ($170.00) | $11,913.70 |
| 05/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $11,931.76 |
| 05/31/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 23156901 | | WU_PROXY | ($18.06) | $11,913.70 |
| 05/31/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 23156901 | | WU_PROXY | ($245.94) | $11,667.76 |
| 05/31/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0438024950006 | | WU_PROXY | ($100.00) | $11,567.76 |
| 06/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $11,585.82 |
| 06/27/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 23595794 | | WU_PROXY | ($280.00) | $11,305.82 |
| 07/03/15 | DIRECT PAYMENT | WU WEB ATM | 23707599 | | WU_PROXY | ($100.00) | $11,205.82 |
| 07/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $11,223.88 |
| 08/03/15 | BANK WIRE TRANSFER | MONEY GRAM | 53988790 | | OPERATOR | ($180.00) | $11,043.88 |
| 08/04/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 24210471 | | WU_PROXY | ($193.00) | $10,850.88 |
| 08/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $10,868.94 |
| 08/23/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 24519440 | | WU_PROXY | ($200.00) | $10,668.94 |
| 08/29/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0438025850003 | | WU_PROXY | ($180.00) | $10,488.94 |
| 09/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $10,507.00 |
| 10/03/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439026160033 | | WU_PROXY | ($220.00) | $10,287.00 |
| 10/04/15 | DIRECT PAYMENT | WU WEB DEBIT CARD | 25230095 | | WU_PROXY | ($147.00) | $10,140.00 |
| 10/18/15 | LATE FEE | | | | OPERATOR | $18.06 | $10,158.06 |
| 10/24/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439026370003 | | WU_PROXY | ($220.00) | $9,938.06 |
| 10/30/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439026430001 | | WU_PROXY | ($141.00) | $9,797.06 |
| 11/12/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439026560002 | | WU_PROXY | ($45.00) | $9,752.06 |
| 11/26/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439026700001 | | WU_PROXY | ($290.00) | $9,462.06 |
| 12/04/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439026780001 | | WU_PROXY | ($70.00) | $9,392.06 |
| 12/30/15 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439027030051 | | WU_PROXY | ($360.00) | $9,032.06 |
| 01/21/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439027250001 | | WU_PROXY | ($265.00) | $8,767.06 |
| 01/28/16 | BANK WIRE TRANSFER | MONEY GRAM | 22623033 | | OPERATOR | ($100.00) | $8,667.06 |
| 02/28/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439027630001 | | WU_PROXY | ($165.00) | $8,502.06 |
| 02/29/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439027640053 | | WU_PROXY | ($200.00) | $8,302.06 |
| 04/02/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439027970012 | | WU_PROXY | ($330.00) | $7,972.06 |
| 04/18/16 | LATE FEE | | | | OPERATOR | $18.06 | $7,990.12 |
| 05/06/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN0439028310006 | | WU_PROXY | ($362.00) | $7,628.12 |
| 05/18/16 | LATE FEE | | | | OPERATOR | $18.06 | $7,646.18 |
| 06/04/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN1460000100018 | | WU_PROXY | ($200.00) | $7,446.18 |
| 06/10/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN1460000160012 | | WU_PROXY | ($160.00) | $7,286.18 |
| 06/18/16 | LATE FEE | | | | OPERATOR | $18.06 | $7,304.24 |
| 07/06/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN1460000420005 | | WU_PROXY | ($160.00) | $7,144.24 |
| 07/07/16 | WARRANTY CANCELLATION | | Rebate | | LSS | ($157.67) | $6,986.57 |
| 07/16/16 | BANK WIRE TRANSFER | CHECK FREE PAY | TN1460000520025 | | WU_PROXY | ($65.00) | $6,921.57 |
| 07/18/16 | LATE FEE | | | | OPERATOR | $18.06 | $6,939.63 |
| 07/30/16 | DIRECT PAYMENT | WU WEB ATM | 30625814 | | WU_PROXY | ($40.00) | $6,899.63 |
| 07/31/16 | DIRECT PAYMENT | WU WEB ACH | 30639556 | | WU_PROXY | ($118.00) | $6,781.63 |
| 08/04/16 | DIRECT PAYMENT | WU WEB ATM | 30711370 | | WU_PROXY | ($100.00) | $6,681.63 |
| 08/04/16 | | | | | WU_PROXY | | |

(TRANS.REP)

**Credit Acceptance**
*We change lives!*

**Transaction Report**   ( Collectible transactions )

Date: 09/22/16
Page:   3 of 3

**Account #:** 77067517
**Customer:** RAJARPAKSE, SAMANTHA

**Address:** 1435 Ragan St
**City:** Memphis
**State:** TN       **Zip:** 381066101

| Date | Description | Sub Type | Reference | Agent | Entered By | Amount | Balance/Total |
|------|-------------|----------|-----------|-------|-----------|--------|---------------|
| 08/04/16 | TRANSACTION CORRECTION | | | | WU_PROXY | $118.00 | $6,799.63 |
| 08/12/16 | DIRECT PAYMENT | WU WEB ATM | 30876801 | | WU_PROXY | ($100.00) | $6,699.63 |
| 08/19/16 | DIRECT PAYMENT | WU WEB ATM | 30999366 | | WU_PROXY | ($200.00) | $6,499.63 |

(TRANS.REP)

EXHIBIT

A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA RAJAPAKSE,

      Plaintiff,

vs.                     Case No. 2:16-cv-13144

CREDIT ACCEPTANCE
CORPORATION,

      Defendant.

---

## AFFIDAVIT OF KIMBERLY CAVAZOS

STATE OF MICHIGAN    )
                         )
COUNTY OF OAKLAND   )

      Comes now Kimberly Cavazos, being first duly sworn, deposes and says:

      1.    I am over the lawful age of twenty-one (21) years and the matters stated herein are of my own personal knowledge and based on books and records, including the documents referenced herein and attached hereto, which were made at or near the time of the occurrence, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters, which were kept in the course of the regularly conducted activity, and which were made as a regular practice.

2.      I am currently employed as a Legal Assistant at Credit Acceptance Corporation, and am authorized to make this affidavit on behalf of Credit Acceptance regarding the matters stated herein.

3.      Credit Acceptance is a Michigan corporation with its principal place of business in Southfield, Michigan.

4.      Attached as Exhibit A is a true and authentic copy of the Retail Installment Contract ("RIC") dated January 7, 2014, and entered into between Samantha Rajapakse (the "Buyer") and 1 Stop Auto Sales (the "Dealer") for the purchase of a 2007 Chevrolet Trailblazer.

5.      Pursuant to the express terms of the RIC, the Dealer assigned all right, title, and interest in the RIC to Credit Acceptance. *See* Ex. A.

6.      The RIC contains an Agreement to Arbitrate. *See* Ex. A.

7.      Credit Acceptance has been continuously servicing this account since January, 2014.

8.      Credit Acceptance has never received from the Buyer any notification that she wished to reject the Agreement to Arbitrate.

Further Affiant sayeth not.

Kimberly Cavazos

2

SWORN TO AND SUBSCRIBED before me this ⟍6th⟍ day of October 2016.

_____
Notary Public

My Commission Expires:

_____

SANDY M POLLOCK
Notary Public - Michigan
Livingston County
My Commission Expires Sep 29, 2019
Acting in the County of _____

3

0027124456-1

## RETAIL INSTALLMENT CONTRACT

ACCOUNT # 77067517                                                    LOT # 5KF

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| SAMANTHA  RAJARPAKSE<br>1435 RAGAN ST<br>MEMPHIS, TN 38106 | N/A | 1 STOP AUTO SALES<br>1005 EAST  BROOKS RD<br>MEMPHIS, TN 38116 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown below as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under this Retail Installment Contract ("Contract"), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures below. You also agree to the terms and conditions below (including the Truth in Lending Disclosures) and on the additional pages of this Contract. The Annual Percentage Rate may be negotiable with Us.

|  | Year and Make | Model and Body Style | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2007 Chevrolet | Trailblazer 4D Utility | tan | 1GNDS13S672256146 | 94,998 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit, including Your down payment of |
|---|---|---|---|---|
| 24.99 % | $ 6,440.88 | $ 10,893.36 | $ 17,334.24 | $ 2,800.00  is<br>$ 20,134.24 |

Payment Schedule: Your payment schedule will be.

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | $ 361.13 | February 07, 2014 and same date of each following month. |

**Security:** You are giving a security interest in the goods or Vehicle being purchased.

**Late Charge:** If a payment is more than 10 days late, You will be charged 5% of the payment.

**Prepayment:** If You pay off early, You may be entitled to a refund of part of the Finance Charge.

**Additional Information:** Please read this Contract for any additional information about nonpayment, default and any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.

**PROPERTY INSURANCE:** You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US. The collision coverage deductible may not exceed $500.

### NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

ARBITRATION NOTICE: PLEASE SEE PAGE 4 OF THIS CONTRACT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS CONTRACT.

ADDITIONAL TERMS AND CONDITIONS: THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION CLAUSE SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

TENNESSEE CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 1 of 5

Original

Buyer's Initials

Buyer's Initials

0027124456-2

# ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including accessories and improvements to the Vehicle) ..................................................... $ __10,998.00__ (1)
2. Sales Tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ __893.86__ (2)

3. Down-Payment Calculation:     Cash Down Payment .................................. $ __2,800.00__ (A)
    Trade-In Description:           Gross Trade-In ............... $ _____ N/A (B)
    Make: __N/A__
    Model __N/A__           Payoff Made by Seller   $ _____ N/A (C)
    Net Trade-In (if negative number, insert "0" in line 3(D) and itemize difference in 5(E) below) (B-C) $ _____ 0.00 (D)
                                      Total Down Payment ..... ............... ...... .. (A + D) $ __2,800.00__ (3)
4. Unpaid Balance of Cash Price (1+ 2 less 3) ........................................................................................... $ __9,091.86__ (4)
5. Other Charges Including Amounts Paid to Others on Your Behalf:
    *(NOTICE: A portion of these charges may be paid to or retained by Us.)
    A.   *Cost of Required Physical Damage Insurance Paid to Insurance Company . ........ .. ............ $ _____ N/A (A)
    B.   *Cost of Optional Extended Warranty or Service Contract Paid to the Company named below........ $ __1,380.00__ (B)
    C.   Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest ..... $ _____ N/A (C)
    D.   Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration ................. $ __122.50__ (D)
      Other Charges (Seller must identify who will receive payment and describe purpose)
    E.   to __N/A__               for lien or lease payoff ... .. . .. ....... .. $ _____ N/A (E)
    F.   *to __N/A__            for Optional GAP Protection ...................... $ _____ N/A (F)
    G.   *to __THE SELLER__        for __DOC FEE__          $ __299.00__ (G)
    H.   *to __N/A__            for __N/A__           $ _____ N/A (H)
    I.   *to __N/A__            for __N/A__           $ _____ N/A (I)
    J.   *to __N/A__            for __N/A__           $ _____ N/A (J)
    Total of Other Charges and Amounts Paid to Others on Your Behalf ........................... . . .................. $ __1,801.50__ (5)
6. Less Prepaid Finance Charge . . . . .......... . ... . . ......... . . ...... .............. ... .... ... ...... ..... $ _____ N/A (6)
7. Amount Financed - Unpaid Balance (4 + 5 less 6) .................................................................................. $ __10,893.36__ (7)

OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT: Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by signing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price of __1,380.00__   Term: __24 Mos.\ 24000 Miles__   Company, __First Automotive Service Corp__

_Samantha_         __01/07/2014__

Buyer's Signature           Date           Buyer's Signature           Date

GAP PROTECTION: Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 5F of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost: $ __N/A__     Term: _____ N/A _____     Provider: __N/A__

Buyer's Signature           Date           Buyer's Signature           Date

NOTICE TO BUYER: 1. Do not sign this Contract in blank. 2. You are entitled to 1 true copy of the Contract You sign without charge. 3. Keep it to protect Your legal rights.

You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.

Buyer's Signature x _Samantha_           Buyer's Signature. x _____

Seller, __1 STOP AUTO SALES__           By. _____           Title: __Charles__

This Contract is signed by the Seller and Buyer(s) hereto this __7th__ day of __January__, __2014__

NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth on page 4 of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD-SUITE 3000, SOUTHFIELD, MICHIGAN 48034/8339, 1-(800)-634-1506.

Seller, __1 STOP AUTO SALES__           By: _____           Title: _____

TENNESSEE CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.                     PAGE 2 of 5

0027124456-3

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle, 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Bad Check Charge.** You agree to pay Us a bad check charge of $30 (or such other amount permitted by applicable law) for any check or like instrument given by You to Us that is returned by Your bank because of insufficient funds or because Your bank account was closed.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Prepayment.** You have the right to prepay Your account balance early without a penalty. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or if You paid Us more than the amount owed to Us under this Contract, We will refund it to You, We will retain a $15.00 acquisition fee before calculating any refund credit. We will not credit or refund amounts less than $1.00.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the Vehicle for the term of this Contract. At any time during the term of this Contract, if You do not have physical damage insurance which covers both the interest of You and Us in the Vehicle, then We may buy it for You. If We do not buy physical damage insurance which covers both interests in the Vehicle, We may, if We decide, buy insurance which covers only our interest.

We are under no obligation to buy any insurance, but may do so if We desire. If We buy either of these coverages, We will let You know what type it is and the charge You must pay. The amount You must pay will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on this Contract. You agree to pay the amount and finance charge in equal installments along with the payments shown on the Payment Schedule.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Insurance, Maintenance or Service Contracts.** This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refund on optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

**Starter Interruption Device and GPS.** You understand and agree that if You are in default, We may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow Us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default in order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

Buyer's Initials _____

Buyer's Initials _____

0027124456-4

## ADDITIONAL TERMS AND CONDITIONS

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.

**Sale of the Repossessed Vehicle.** Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected in our records, in a reasonable period before the date of the intended sale or transfer (or such other period of time as is required by law). If the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of the sale will be figured this way: Any charges for taking, holding, preparing for sale, and selling the Vehicle, and any attorney fees and court costs, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for it. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

**Collection Costs.** You will pay any collection costs We incur relating to Your default. If We hire an attorney to collect what You owe and the attorney is not our salaried employee, You will also pay the attorney's reasonable fees and any court costs as permitted by law.

**Delay in Enforcing Rights and Changes of this Contract.** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others. Any change in the terms of this Contract must be in writing and signed by Us. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable.

> WARRANTIES SELLER DISCLAIMS. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY WARRANTIES AND THAT THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED BY THE SELLER, COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT. THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT MAY BE PROVIDED BY THE VEHICLE MANUFACTURER.

**Interest After Maturity.** You further agree to pay interest at the highest rate permitted by applicable law, on any amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means the earlier of the date Your final payment is due or the date We accelerate the Contract.

**Judgment Rate.** Interest on any judgment awarded on this Contract will be at the Annual Percentage Rate stated on page 1 of this Contract, or at the highest rate permitted by applicable law.

**Governing Law.** The terms of this Contract are governed by the law of the state of the Seller's address shown on page 1 of this Contract, except to the extent preempted by applicable federal law.

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

## AGREEMENT TO ARBITRATE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.

**Your Right to Reject:** If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

Buyer's Initials

Buyer's Initials

0027124456-5

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute. Any Dispute Notice to You will be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You). Any Dispute Notice You send must give Your Account Number, telephone number and address. Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. All statutes of limitation that otherwise would apply to an action brought in court will apply in arbitration. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs.

If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute. In addition, if You or We elect to arbitrate a Dispute, (a) neither You nor We may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant or class member; (b) neither You nor We may act as a private attorney general in court or in arbitration; (c) Disputes brought by or against You may not be joined or consolidated with Disputes brought by or against any other person; and (d) the arbitrator shall have no power or authority to conduct a class-wide arbitration, private attorney general arbitration or joined or consolidated arbitration (this sentence including subparts a through d hereof is referred to in this Arbitration Clause as the "Class Action Waiver"). In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause, whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and Us.

Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract. If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause. In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice. The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator. We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of any such fees. We will bear the expense of our witnesses, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring. You will bear the expense of Your attorneys, experts and witnesses if We prevail in an arbitration. However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced. Also, We will bear any fees if applicable law requires Us to. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You. Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et Seq. ("FAA"). However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause that describes who will bear the costs for the initial proceeding before a single arbitrator.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

TENNESSEE CREDIT ACCEPTANCE CORPORATION (08-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 5 of 5

Buyer's Initials

Buyer's Initials

# EXHIBIT

# 2



**OCTAVIA ANDERSON, Plaintiff, v. CREDIT ACCEPTANCE CORPORATION, Defendants.**

**Case No. 1:15-CV-211**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2015 U.S. Dist. LEXIS 70149*

**June 1, 2015, Decided**
**June 1, 2015, Filed**

**COUNSEL:** [*1] For Octavia Anderson, plaintiff: Ronald Scott Weiss, Law Offices of Ronald S. Weiss, West Bloomfield, MI.

For Credit Acceptance Corporation, defendant: Stephen W. King, King & Murray, PLLC, Birmingham, MI.

**JUDGES:** HON. GORDON J. QUIST, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** GORDON J. QUIST

**OPINION**

Plaintiff, Octavia Anderson, alleges that Defendant, Credit Acceptance Corporation, violated the Electronic Fund Transfer Act (EFTA), *15 U.S.C. § 1693*. Defendant has moved to compel arbitration and dismiss this action, and Plaintiff has failed to respond to that motion. For the reasons that follow, the Court will grant Defendant's motion.

*Background*

Plaintiff entered into a financing agreement with Betten Chevrolet (the Retail Installment Contract), and Betten Chevrolet assigned its rights under that contract to Defendant. (Dkt. #1 at Page ID#2, ¶7.) The contract contained an arbitration clause stating that if any dispute between Plaintiff and Betten Chevrolet or its assignee arose, either party could elect to have such dispute arbitrated. (Dkt. #6 at Page ID#53.) The contract defined a dispute as "any controversy or claim" between the parties "arising out of or in any way related to [the Retail Installment Contract]." (*Id.*) The parties [*2] also entered into an agreement whereby Plaintiff authorized payments by automatic electronic debit. (Dkt. #1 at Page ID#2, ¶7.) Plaintiff's claim arises out of the electronic debit agreement.

*Discussion*

The Federal Arbitration Act ("FAA") embodies the "liberal federal policy of favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)*. In determining whether to grant a motion to compel arbitration, courts determine whether (1) "a valid agreement to arbitrate exists between the parties" and (2) "the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003)*.

Plaintiff signed the Retail Installment Contract, which contained an arbitration clause. That clause included broad language providing that it extended to any dispute arising out of or related to the contract. This dispute, which is based on an agreement for making the payments required by the Retail Installment Contract, falls within the scope of that provision. Finally, there is no reason to believe that Plaintiff's claim would not be subject to arbitration simply because it is based on the EFTA. *See Williams v. Champs Auto Sales, Inc., No. 14-cv-12866, 2014 U.S. Dist. LEXIS 167765, 2014 WL 6886546, at *2 (E.D. Mich. Dec. 4, 2014)* (listing cases holding that EFTA claims are subject to arbitration).

*Conclusion*

Because [*3] there was a valid agreement to arbitrate, and the dispute at issue falls within the substantive

2015 U.S. Dist. LEXIS 70149, *

scope of that agreement, Plaintiff must submit her claims to arbitration.

Dated: June 1, 2015

/s/ Gordon J. Quist

GORDON J. QUIST

UNITED STATES DISTRICT JUDGE



1 of 100 DOCUMENTS

**WAYNE COPELAND, THOMAS SAMPSON, JR., and all others similarly situated, Plaintiffs, v. HOWARD ALAN KATZ, an individual; KATZ & KATZ, P.C., a Michigan Corporation, ROBERT LUTREN, an individual; ROBERT LUTREN, INC., a Michigan Corporation; HENRY FORD HEALTH SYSTEM, a Michigan Corporation; CREDIT ACCEPTANCE CORPORATION, a Michigan Corporation, Defendants.**

Case No. 05-73370

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

*2005 U.S. Dist. LEXIS 31042*

November 28, 2005, Decided
November 28, 2005, Filed

**COUNSEL:** [*1] For Wayne Copeland, Thomas Sampson, Plaintiffs: David R. Dubin, Steven D. Liddle, Macuga & Liddle, Detroit, MI.

For Howard Alan Katz, Katz and Katz, P. C., Defendants: David F. DuMouchel, George B. Donnini, Laurie J. Michelson, Butzel Long, Detroit, MI.

For Robert Lutren, Robert Lutren, Incorporated, Defendants: Kelly A. Kruse, Norbert B. Leonard, Leonard Kruse, Bloomfield Hills, MI.

For Henry Ford Health System, Defendant: Terrence J. Miglio, Larry E. Powe, Stuart M. Schwartz, Keller Thoma, Detroit, MI.

For Credit Acceptance Corproation, Defendant: Dennis M. Haffey, Stephen W. King, Dykema Gossett, Bloomfield Hills, MI.

For Robert Lutren, Robert Lutren, Incorporated, Cross Defendants: Kelly A. Kruse, Norbert B. Leonard, Leonard Kruse, Bloomfield Hills, MI.

**JUDGES:** PATRICK J. DUGGAN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PATRICK J. DUGGAN

**OPINION**

**OPINION AND ORDER GRANTING DEFENDANT CREDIT ACCEPTANCE CORPORATION'S MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**

At a session of said Court, held in the U.S. District Courthouse, City of Detroit, County of Wayne, State of Michigan, on November 28, 2005.

PRESENT: THE HONORABLE PATRICK J. DUGGAN U.S. DISTRICT [*2] COURT JUDGE

On August 8, 2005, Plaintiffs filed their First Amended Class Action Complaint against Defendants in the Circuit Court for Oakland County, alleging fraudulent debt collections. Defendants removed the action to this Court pursuant to *28 U.S.C. §§ 1331, 1453,* and *1446.* Presently before the Court is Defendant Credit Acceptance Corporation's Motion to Stay Proceedings Pending Arbitration, filed on September 30, 2005. For the reasons set forth below, Defendant's Motion shall be granted.

**I. Factual Background**

2:16-cv-13144-MFL-SDD    Doc # 12    Filed 10/06/16    Pg 45 of 66    Pg ID 73

2005 U.S. Dist. LEXIS 31042, *                                        Page 2

Plaintiffs' Complaint alleges that Defendants Henry Ford Health System and Credit Acceptance Corporation hired Defendant Katz and his firm to collect past-due debts. (First Am. Compl. at P15). Katz hired Lutren and his firm to serve the debtors with the summons and complaint notifying them to appear in court. (*Id.* at P17). Plaintiffs' Complaint alleges that Lutren's employees falsely represented in court documents that they had served the debtors when they had not. (*Id.* at P18). As a result, Plaintiffs failed to appear in court and had default judgments entered against them. (*Id.* at 23-24). According to Plaintiffs, Defendants [*3] knew or should have known that the court documents contained false information. (*Id.* at PP19-20, 29, 31). Plaintiffs' Complaint is brought on behalf of Plaintiffs Wayne Copeland, Thomas Sampson, Jr., and "all others who have similarly suffered from Defendants', Howard Alan Katz, Katz & Katz, P.C., Robert Lutren, Robert Lutren, Inc., failure to make any attempt to serve Plaintiffs with the Summons and Complaints in the underlying debt collection lawsuits filed on behalf of Defendant Credit Acceptance Corporation and Defendant Henry Ford Health System . . . ." (*Id.* at P1).

Specifically, Plaintiff Copeland's claims arising out of efforts to collect past-due amounts owed under a Retail Installment Contract that was assigned to Defendant Credit Acceptance Corporation, under which Copeland purchased a vehicle. [1] The Retail Installment Contract contained an "Agreement to Arbitrate" provision, which provided, in part:

> Any dispute, controversy or claim between Buyer, Seller and/or Seller's assignee, Credit Acceptance Corporation, or the employees, agents, or assignees of the other, arising out of or in any way related to the Contract, or any default hereunder, or the collection [*4] of any amounts due under this Contract, or the purchase, sale, delivery, set-up quality of the vehicle, or any product or service included in the Contract, whether based on contract, an alleged tort or other legal theory, shall be fully resolved by binding arbitration.

(Pl.'s Mot. Ex. 1, Retail Installment Contract).

1  Plaintiff Sampson does not have any business relationship with Defendant Credit Acceptance Corporation. (*See* Def.'s Mot. Ex A, Zolman Decl. at P4). Rather, Sampson's claim arises out of alleged indebtedness to Defendant Henry Ford Health System.

The Retail Installment Contract also provided that the arbitration provision was "made pursuant to a transaction involving or affecting interstate commerce, and shall be governed by the Federal Arbitration Act (*9 U.S.C. § 1 et seq.*)." (*Id.*). Moreover, the arbitration provision reserved questions of arbitrability for the arbitrator to decide: "Any question whether a particular controversy or claim is subject to arbitration [*5] or any question as to enforceability of all or part of this arbitration provision shall be decided by the arbitrator." (*Id.*). In addition, the Retail Installment Contract contained a provision waiving representative actions: "both parties agree that all claims must be resolved on an individual basis through arbitration and representative actions, such as class actions, are prohibited." (*Id.*).

## II. Discussion

A dispute is arbitrable where a valid arbitration agreement exists between the parties and the parties' dispute falls within the substantive scope of the arbitration agreement. *Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003)*. Plaintiff Copeland does not dispute that this action falls within the scope of the arbitration agreement. Rather, Plaintiff contends that the arbitration agreement is unenforceable as unconscionable.

To void a contractual provision as unconscionable, under Michigan law, a court must find *both* "procedural" and "substantive" unconscionability. *Northwest Acceptance Corp. v. Almont Gravel, Inc., 162 Mich. App. 294, 302, 412 N.W.2d 719, 723 (1987)*. In Michigan, the following two-prong [*6] test is applied to determine whether a provision was procedurally and substantively unconscionable:

> (1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?

> (2) Is the challenged term substantively reasonable?

*Id.; see also Rehmann, Robson & Co. v. McMahan, 187 Mich. App. 36, 43, 466 N.W.2d 325, 329 (1991)*.

### A. The arbitration provision is not procedurally unconscionable

Under Michigan law, "the most important factors in deciding procedural unconscionability are: (1) whether the economically weaker party had an alternative source with which it could contract, and (2) whether the contract

term was in fact negotiated." *Pack v. Damon Corp., 320 F. Supp. 2d 545, 556 (E.D. Mich. 2004).*

In this case, Plaintiff has failed to demonstrate that he could not have obtained a vehicle from another seller who would not have required Plaintiff to sign an arbitration agreement.

Moreover, Plaintiff has not provided any evidentiary support for his claim that he would not have been able to purchase the vehicle without agreeing to the [*7] arbitration clause. In *Pack,* the court found that the plaintiff failed to meet his burden of showing procedural unconscionability where the plaintiff "[did] not assert that he attempted to negotiate the arbitration provision and was refused." *Pack, 320 F. Supp. 2d at 556.* Similarly, in this case, nowhere in the record does Plaintiff Copeland indicate that he attempted to negotiate the arbitration provision.

Finally, Plaintiff contends that given the circumstances surrounding the agreement's form and execution, it is unconscionable. The Court disagrees. First, Plaintiff has failed to describe any "circumstances" which would lend support to his argument that the agreement's execution was unconscionable. Second, the agreement was contained in a short two-page contract. The first page contained the following language:

> ARBITRATION NOTICE: PLEASE SEE THE REVERSE SIDE OF THIS CONTRACT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS CONTRACT.

(Pl.'s Resp. Ex. 1).

In addition, the arbitration agreement, which is contained on the second page, in three paragraphs is clearly titled: "AGREEMENT TO ARBITRATE." The first sentence of the agreement [*8] provides: "Any dispute, controversy or claim . . . arising out of or in any way related to the Contract . . . shall be fully resolved by binding arbitration." Therefore, the Court does not believe that Plaintiff has presented any evidence to demonstrate that the agreement's form was unconscionable.

**B. The arbitration provision is not substantively unconscionable**

Even assuming *arguendo* that Plaintiff had established that the arbitration provision was procedurally unconscionable, Plaintiff has failed to show that the provision was substantively unconscionable. Plaintiff contends that the arbitration agreement was substantively unreasonable because: (1) the provision was one-sided;

(2) the costs of arbitration prohibit Copeland from vindicating his rights; and (3) it precluded class actions. The Court will address each of these arguments separately.

Plaintiff contends that arbitration provision is one-sided because it requires Plaintiff to submit to arbitration but allows Defendant to file a lawsuit, citing the following provision:

> Notwithstanding the foregoing, Seller and Seller's assignee Credit Acceptance Corporation retain the right . . . (3) to enforce the [*9] monetary obligation of Buyer under the contract through judicial relief. Such judicial relief may take the form of a lawsuit.

(Pl.'s Resp. Ex. 1).

However, the agreement also provides:

> Upon the invocation of arbitration under this Contract the other party shall submit to arbitration any claim or counterclaim which such party may have against the invoking party, whether deemed to be compulsory or permissive in law.

(*Id.*).

Defendant contends that the effect of this second provision is that even if Defendant were to file a lawsuit, Plaintiff could invoke the arbitration provision and require the claims to be submitted to arbitration. In addition, the Sixth Circuit has found that arbitration agreements may be enforceable even if they require one party, but not the other, to arbitrate its claims. *See, e.g., Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167, 168-69 (6th Cir. 1989).* Thus, the Court does not believe that the provision cited by Plaintiff renders the arbitration agreement substantively unreasonable.

Plaintiff contends that the costs of arbitration prevent Plaintiff from vindicating his rights. To invalidate [*10] an arbitration provision based on excessive costs, it is the challenging party's burden to "come forward with evidence demonstrating that the potential costs of arbitration . . . are great enough to deter plaintiff or similarly situated individuals from seeking to vindicate their rights in an arbitral forum." *Pack, 320 F. Supp. 2d at 556.* Moreover, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the

burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000).*

In this case, Plaintiff has failed to come forward with any evidence demonstrating that the costs of arbitration are a deterrence. First, the arbitration provision requires Defendant to pay that the first day's arbitration fees and costs:

> Seller and Seller's assignee, Credit Acceptance Corporation agree for the first day of arbitration to bear the arbitrator's fee and any other reasonable expense or cost (excluding attorney fees) that you would not be required to bear if you were free to bring this dispute,  [*11]  controversy or claim in court, as well as any other reasonable expense or cost that is unique to the arbitration process.

(Def.'s Reply Ex. A).

Plaintiff has not presented this Court with any evidence of a likelihood that arbitration would exceed one day, resulting in any costs at all to Plaintiff.

Second, any costs Copeland would be required to pay under the rules of any of the three available arbitration administrators are limited. For example, because Plaintiff is seeking approximately $ 1,500 in damages, under the National Arbitration Forum schedule, Plaintiff's claim is one of "$ 74,999 or less" and therefore, his fees are limited to a maximum of $ 250. (Pl.'s Resp. Ex.

3, National Arbitration Forum fee schedule at 4). In addition, fees charged by JAMS and the American Arbitration Association are limited to $ 125. (Pl.'s Resp. Ex. 2; Def.'s Reply Ex. B). Therefore, the Court does not believe that the arbitration provision should be invalidated because it imposes undue costs on Plaintiff.

Finally, Plaintiff contends that the arbitration agreement's preclusion of class actions renders the agreement substantively unreasonable. The Court disagrees. Although this issue has [*12]  not been addressed by the Sixth Circuit, other Circuits have found that arbitration agreements which contain a class action waiver are not unconscionable. "Arbitration agreements precluding class action relief are valid and enforceable." *Jenkins v. First Am. Cash Advance of Georgia, LLC, 400 F.3d 868, 877-78 (11th Cir. 2005); see also Livingston v. Associates Finance, Inc., 339 F.3d 553, 559 (7th Cir. 2003)* (upholding arbitration agreement's class action waiver); *Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 638-39 (4th Cir. 2002)* (same).

Consequently, because Plaintiff has failed to demonstrate that the arbitration agreement at issue was procedurally and substantively unconscionable, the Court must stay the proceedings pending arbitration. *See 9 U.S.C. § 3.*

Accordingly,

**IT IS ORDERED** that Defendant Credit Acceptance Corporation's Motion to Stay Proceedings Pending Arbitration is **GRANTED.**

s/PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**LAURA GARCIA,** an individual,

                Plaintiff,

        vs.

**WELTMAN, WEINBERG & REIS CO.
OF MICHIGAN,** a Michigan Corporation,
and **CREDIT ACCEPTANCE
CORPORATION,** a Michigan Corporation,

                Defendants.

                      No. 2:13-cv-14362
                      Hon. Gerald E. Rosen

_____/

## OPINION AND ORDER GRANTING DEFENDANT CREDIT ACCEPTANCE CORPORATION'S MOTION TO COMPEL ARBITRATION

### I. INTRODUCTION

In this consumer debt collection matter, Defendants have moved to compel arbitration based on the parties' underlying car loan agreement. Having reviewed and considered the parties' written submissions in support of and opposition to the motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the

1

Court's ruling on the motion.

## II. FACTUAL BACKGROUND

### A.   The Agreement to Arbitrate

On February 17, 2003, Plaintiff Laura Garcia purchased a vehicle from an automobile dealership in Taylor, Michigan. (Ex. 1 to Def's Mtn., Dkt. # 11). Plaintiff financed this purchase by entering into a Retail Installment Contract (RIC) with the dealership. (*Id.*). Under the terms of the RIC, the dealership assigned all of its rights, title, and interest to Defendant Credit Acceptance Corporation for servicing and collection. (*Id.*).

As pertinent here, the front page of the RIC sets forth two specific paragraphs concerning its arbitration provision:

> **ARBITRATION NOTICE:** PLEASE SEE THE REVERSE SIDE OF THIS AGREEMENT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS AGREEMENT.

> **ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION NOTICE SET FORTH ON THE REVERSE SIDE HEREOF ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

(*Id.*). The back page of the RIC then sets forth the "Agreement to Arbitrate," which provides in relevant part:

> Any dispute, controversy or claim between Buyer, Seller and/or Seller's assignee, Credit Acceptance Corporation, or the

2

> employees, agents or assignees of the other, arising out of or in any
> way related to the Agreement, or any default hereunder . . .
> whether based on contract, an alleged tort or other legal theory,
> shall be fully resolved by binding arbitration.
>
> * * *
>
> Notwithstanding the foregoing, Seller and Seller's assignee Credit
> Acceptance Corporation retain the right . . . to enforce the
> monetary obligation of Buyer under the Agreement through
> judicial relief. Such judicial relief may take the form of a lawsuit.
> The institution and maintenance of any action for judicial relief or
> exercise of self-help remedies shall not constitute a waiver of the
> right to submit any controversy or claim to arbitration, including
> any counterclaim asserted in any judicial action, and including
> those controversies or claims arising from the exercise of any such
> judicial relief to the exercise of self-help remedies.

(*Id.*).

## B.   Plaintiff's Default and Defendants' Debt Collection Efforts

In April 2007, Defendant Weltman, Weinberg & Reis obtained a judgment on behalf of Credit Acceptance Corporation against Plaintiff in the 33rd District Court of Michigan relative to her default under the RIC. (Plf's Compl., Dkt. #1, at ¶¶ 6-7). Weltman filed various garnishments in an attempt to satisfy this judgment. (*Id.* at ¶¶ 8-11). On September 28, 2012, the 33rd District Court suspended the garnishments and required that Plaintiff make monthly installment payments beginning in November 2012. (*Id.* at ¶ 11; Ex. B to Plf's Resp., Dkt. # 14-3).

Plaintiff mailed the November 2012 payment to Weltman. (Plf's Compl., Dkt. #1, at ¶ 12). Later on in November, a new firm representing Credit

3

Acceptance Corporation, Weber & Olcese, substituted in as counsel for Weltman in the 33rd District action. (*Id.* at ¶ 13). Based on this substitution, Plaintiff then mailed her December 2012 payment to Weber & Olcese. (*Id.* at ¶ 14). Weber & Olcese returned Plaintiff's check, indicating that it had returned her file to Credit Acceptance Corporation and advising Plaintiff to contact Weltman. (*Id.* at ¶ 15). Plaintiff contacted Weltman, which told Plaintiff that it also no longer had her file and directed her to call Credit Acceptance Corporation. (*Id.* at ¶ 16). So Plaintiff called Credit Acceptance Corporation. A representative informed her that "she couldn't help her" because Credit Acceptance Corporation "did not know to whom she should send the payments or to what [law] firm her case was resassigned." (*Id.* at ¶ 17). Based on these calls, Plaintiff stopped making her payments. (*Id.* at ¶ 18). Several months then passed until September 2013, when she received a tax garnishment dated August 8, 2013 that Weltman filed on behalf of Credit Acceptance Corporation. (*Id.* at ¶ 19; Ex. A to Plf's Resp., Dkt. # 14-2). Plaintiff called Weltman, and was told "she needed to bring the account current and pay $1,000.00." (Plf's Compl., Dkt. # 1, at ¶ 20).

Plaintiff commenced this instant litigation shortly thereafter. Count I asserts that Weltman violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, when it "fail[ed] to disclose that it had returned as counsel for [Credit Acceptance Corporation] and that Plaintiff should tender her checks to it,"

4

as well as when it subsequently "default[ed] her on her court ordered payment plan." (*Id.* at ¶ 25). Count II claims that both Defendants violated the Michigan Regulation of Collection Practices Act (MRCPA), M.C.L. § 445.251 *et seq*, by knowingly misinforming Plaintiff as to whom she should remit payment and garnishing her Michigan tax refund. (*Id.* at ¶¶ 31-35).

Credit Acceptance Corporation has now moved to compel arbitration based upon the Agreement to Arbitrate (Def's Mtn., Dkt. # 11), which Weltman joins. (Dkt. # 12). Plaintiff argues that arbitration is not appropriate for two reasons: (1) the copy of the RIC attached by Credit Acceptance Corporation in support of its motion is illegible; and (2) Credit Acceptance Corporation waived its right to arbitrate by participating in the underlying action in the 33rd District Court. As set forth below, Plaintiff's arguments do not overcome the strong presumption in favor of arbitrability, and the Court therefore GRANTS Credit Acceptance Corporation's Motion.

## III. DISCUSSION

### A.    Applicable Standards

"The Federal Arbitration Act . . . provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450-51 (6th Cir. 2005) (citing 9 U.S.C. § 2). It

5

is well-settled that there is a strong federal policy in favor of arbitration: "When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (citation omitted). The Sixth Circuit has set forth a four-factor inquiry for examining a motion to compel arbitration:

> [W]hen considering a motion to stay proceedings and compel arbitration under the [Federal Arbitration] Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer*, 394 F.3d at 451 (citation omitted).

**B.    Arbitration is Appropriate**

**1.    The parties have a valid arbitration agreement**

As an initial matter, the Court easily concludes that the parties have a valid arbitration agreement. Plaintiff's sole opposition on this point is that the copy of the RIC attached to Credit Acceptance Corporation's Motion was "illegible."

(Plf's Resp., Dkt. # 14, at 7-8).[1]  In reply, Credit Acceptance Corporation attached a more legible copy of the RIC, an affidavit by its custodian of records attesting to the copy's authenticity, and an email exchange with Plaintiff's counsel providing him with an electronic copy of the RIC.  (Exs. A-D to Def's Reply, Dkt. # 15). Upon review of these documents, the Court is more than satisfied that the RIC contains a valid arbitration agreement.

## 2.  The scope of the arbitration agreement covers Plaintiff's claims

As Plaintiff is resisting arbitration, she "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolf*, 531 U.S. 79, 91 (2000).  Plaintiff has raised *no* argument as to why her claims under the FDCPA and MRCPA are unsuitable for arbitration.  Moreover, given the breadth of the Agreement to Arbitrate, she cannot.  It provides that "*[a]ny* dispute, controversy or claim between Buyer, Seller and/or Seller's assignee, Credit Acceptance Corporation, or the employees, *agents* or assignees of the other, *arising out of or in any way related* to the Agreement, *or any default hereunder* . . . whether based on contract, an alleged tort or other legal theory, shall be fully resolved by binding arbitration."  Accordingly, the Court concludes that Plaintiff's FDCPA and MRCPA claims -- which arise out of Plaintiff's default under the RIC and Defendants' subsequent efforts to collect the outstanding debt --

---

[1] She does not, for example, contend that she did not sign the RIC or that other contractual defenses exist.

are within the Agreement to Arbitrate's ambit. *Highlands*, 350 F.3d at 577

("Where the arbitration clause is broad, only an express provision excluding a

specific dispute, or the most forceful evidence of a purpose to exclude the claim

from arbitration, will remove the dispute from consideration by the arbitrators.")

(citation omitted); *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 960-

61 (N.D. Ohio 2009) (construing arbitration clause in another retail installment

contract matter with Credit Acceptance Corporation -- "any dispute 'arising out of

or in any way related to this Contract, or any default under this Contract, or the

collection of amounts due under this Contract . . . shall be fully resolved by

binding arbitration'" -- to cover analogous debt collection practice and consumer

protection claims under Ohio law).[2]

### 3.    Congress did not intend for FDCPA claims to be nonarbitrable

The Court now turns to the third, and in this case, last factor:[3] Whether

Congress intended FDCPA claims to be nonarbitrable. "The burden is on the party

opposing arbitration . . . to show that Congress intended to preclude a waiver of

judicial remedies for the statutory rights at issue." *Shearson/Am. Exp., Inc. v.*

*McMahon*, 482 U.S. 220, 227 (1987). Here, Plaintiff has neither raised the issue of

congressional intent nor presented any evidence that Congress intended FDCPA

---

[2] There is no disputing that Plaintiff's claims against Weltman, an agent of Credit
Acceptance Corporation, also fall within the scope of this agreement.
[3] Because all of Plaintiff's claims are subject to arbitration, there is no need to
examine the fourth factor -- whether a stay is appropriate.

8

claims to be nonarbitrable and has therefore not satisfied her burden. *See also*

*Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861 F. Supp. 2d 724, 730

(E.D. Va. 2012) ("[T]here is no reason to believe . . . that Congress meant to

preclude arbitration in the circumstances of the case [involving a FDCPA

claim]."); *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831

(S.D. Ohio 2008) ("Congress did not intend FDCPA claims to be non-arbitrable.

Courts routinely permit arbitration of such claims.").

In sum, the Court finds that Plaintiff's claims in this instant litigation are

subject to arbitration.

## C.    Credit Acceptance Corporation did not waive its right to arbitrate this matter

Even if claims are clearly subject to arbitration, a party's conduct may waive

its ability to compel arbitration. "A party may waive an agreement to arbitrate by

engaging in two courses of conduct: (1) taking actions that are completely

inconsistent with any reliance on an arbitration agreement; and (2) delaying its

assertion to such an extent that the opposing party incurs actual prejudice."

*Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir.

2012) (citations and internal quotations omitted). "[B]ecause of the strong

presumption in favor of arbitration, waiver of the right to arbitration is not to be

lightly inferred.'" *Id.* (citation omitted); *see also JPD, Inc. v. Chronimed*

*Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) ("Though we have declined to

9

sharply define what conduct suffices [to establish that a party acted inconsistent with its right to arbitrate], it typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate. *The strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns.*") (citation omitted and emphasis added). Here, Plaintiff claims that Credit Acceptance Corporation "waived the agreement by filing a lawsuit against Plaintiff in state court and obtaining the underlying judgment and later litigating Plaintiff's objections to collect upon the judgment." (Plf's Resp., Dkt. #14, at 8). The Court disagrees.

### 1.    Credit Acceptance Corporation did not take any action completely inconsistent with its right to arbitrate Plaintiff's claims

At first blush, Plaintiff presents a colorable argument that Credit Acceptance Corporation's participation in the prior state litigation was completely inconsistent with its right to arbitrate Plaintiff's claims. This is in large part due to the Agreement to Arbitrate's breadth, which covers "[a]ny dispute, controversy or claim . . . arising out of [the RIC], or any default hereunder." Credit Acceptance Corporation's collection lawsuit against Plaintiff was most certainly a "dispute, controversy or claim" arising out of her defaulting on her obligations under the RIC.

The problem with Plaintiff's argument resides in the details of the

Agreement to Arbitrate. The very next paragraph -- which Plaintiff conveniently omits -- expressly permitted Credit Acceptance Corporation to file its state court collection action *without* waiving its right to arbitrate:

> Notwithstanding the foregoing , . . . *Credit Acceptance Corporation retain[s] the right . . . to enforce the monetary obligation of Buyer under the Agreement through judicial relief.* Such judicial relief may take the form of a lawsuit. *The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not constitute a waiver of the right to submit any controversy or claim to arbitration,* including any counterclaim asserted in any judicial action, and *including those controversies or claims arising from the exercise of any such judicial relief to the exercise of self-help remedies.*

To be sure, the Sixth Circuit has cautioned against a finding that a "no waiver" clause is outcome-determinative when evaluating whether a party's conduct waived its right to contractual arbitration. *Johnson*, 680 F.3d at 717 (citation omitted). "This makes sense because to allow the 'no waiver' clause to preclude a finding of waiver would permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of the proceedings and allow parties to test the water before taking the swim by delaying assertion of their right to arbitration until the litigation is nearly complete." *Id.* at 717 (alterations and quotations omitted). Rather, a court must undertake the "ordinary analysis" discussed above as to whether a party took steps inconsistent with an arbitration agreement. *Id.*

It is clear that Credit Acceptance Corporation's suit against Plaintiff to

enforce her monetary obligations under the RIC was not clearly inconsistent with the terms of the Agreement to Arbitrate. First, though not outcome-determinative, the Agreement to Arbitrate's express language allowed Credit Acceptance Corporation to file a debt collection lawsuit *without* waiving its arbitration rights. Stated differently, Credit Acceptance Corporation's acts were *consistent with the terms of the Agreement to Arbitrate*. Second, the issues at play in the state court litigation -- did Plaintiff breach the RIC and was Credit Acceptance Corporation entitled to enforce a judgment -- are fundamentally different from Plaintiff's unfair debt collection practice claims under the FDCPA and MRCPA. Numerous courts across the country have found that commencing a separate debt collection lawsuit does not, on its own, waive the right to arbitration. *See, e.g., Davisson*, 644 F. Supp. 2d at 957 (Credit Acceptance Corporation's filing of a debt collection action in state court under similar arbitration agreement did not waive its right to arbitrate the debtor's counterclaims arising under analogous debt collection practice and consumer protection statutes under Ohio law); *see also Hodson*, 531 F. Supp. 2d at 831 (rejecting argument that creditor waived its right to arbitrate a debtor's FDCPA claim arising out of the creditor's successful collection actions in state court and the garnishment of the debtor's wages); *Fidelity Nat. Corp. v. Blakely*, 305 F. Supp. 2d 639, 642 (S.D. Miss. 2003) (similar); *Schwartz v. CACH, LLC*, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014) (similar); *Morrow v. Soeder*,

2006 WL 2855024, at *3 (E.D. Mo. Oct. 3, 2006) (similar); *Fields v. Howe*, 2002 WL 418011, at *7-8 (S.D. Ind. March 14, 2002) (similar); *cf Kennedy v. Homecomings Fin. Network*, 2006 WL 2983019, at *3 (E.D. La. Oct. 17, 2006) (no waiver where arbitration agreement expressly carved out the defendant's ability to file foreclosure actions).

Plaintiff did not present any authority suggesting that commencing and participating in a separate state court debt collection action that was expressly contemplated by an arbitration agreement waived a creditor's right to arbitrate unfair debt collection practice claims arising out of the creditor's allegedly improper conduct during and subsequent to the state court proceedings.[4] Nor could this Court's own research locate any such authority, which is not a surprise given the strong preference towards arbitration. Indeed, holding otherwise would vitiate the core tenant of the Federal Arbitration Act: "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced *according*

---

[4] In addition to citing *Johnson*, Plaintiff cites to *Dean vs. Draughons Junior College, Inc* , 2012 WL 3308370 (M.D. Tenn. Aug. 13, 2012), for the proposition that "a party can waive the right to arbitrate otherwise arbitrable claims based on its participation in litigation." (Plf's Resp., Dkt. # 14, at 8). *Dean* is inapposite. First, it addressed whether the sole act of removing an action to federal court waives the right to enforce an arbitration agreement. 2012 WL 3308370, at *2-3. It did not examine the factual scenario presented here. Second, the *Dean* Court held that the Defendants *did not* take any action that was "completely inconsistent" with the arbitration agreement because they "filed the instant Motion to Compel Arbitration only one week after removing the action . . . , have not filed an Answer, participated in discovery, or engaged in court-supervised settlement discussions." *Id.* at *3.

to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (emphasis added). Here, Plaintiff filed this instant litigation and Defendants promptly moved to compel arbitration. There was no action inconsistent with the Agreement to Arbitrate in this matter.

### 2.   Plaintiff has not incurred prejudice

Even if Credit Acceptance Corporation's actions could be construed as inconsistent with the Agreement to Arbitrate, Plaintiff cannot show that she incurred actual prejudice *as a result of Credit Acceptance Corporation's delay in requesting arbitration.* In *Johnson*, the Sixth Circuit described the types of prejudice necessary to not enforce an arbitration agreement:

> Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense. Prejudice can also be found where a party has gained a strategic advantage by obtaining something in discovery that would be unavailable in arbitration.

680 F.3d at 719-20 (internal citations and quotation marks omitted). Plaintiff does not argue that compelling this matter to arbitration would result in relitigating issues that Credit Acceptance Corporation lost elsewhere. In fact, she cannot -- Credit Acceptance Corporation *won* against Plaintiff in state court *on different issues.* Nor does Plaintiff claim that Defendants "obtain[ed] something in discovery" to their advantage. Instead, Plaintiff contends that she "incurred actual

14

prejudice in the form of a judgment against her and the garnishment of her funds." (Plf's Resp., Dkt. # 14, at 9).

Plaintiff's argument fails to recognize that there must be a link between the failure to move for arbitration and her injuries; she must point to prejudice that was *caused* by a delay in moving for arbitration. The injuries to which she points -- a state court judgment and the resulting garnishments -- were caused not by a failure to timely move for arbitration, but rather arise out of an independent cause of action relating to *her* default. Stated differently, her "injuries" are associated with the outcome of the debt collection lawsuit and not with proceedings related to her claims under the FDCPA and the MRCPA. Plaintiff's alleged "prejudice" falls well short of those cases finding that a significant delay or expense justified negating an arbitration agreement. *See, e.g., Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 340 (6th Cir. 2010) ("For more than two years before Defendants attempted to compel arbitration, Plaintiffs incurred the costs of active litigation in two federal courts. Plaintiffs have employed four attorneys, undergone extensive discovery, argued four summary judgment motions, and been subjected to a change in venue at Defendants' request. . . . Plaintiffs have suffered actual prejudice as a result of Defendants' delay.").

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Credit Acceptance Corporation's Motion to Compel Arbitration [Dkt. # 11] is granted.

IT IS FURTHER ORDERED that Plaintiff Laura Garcia and Defendants Weltman, Weinberg & Reis Company of Michigan and Credit Acceptance Corporation are directed to proceed with arbitration of Plaintiff's claims pursuant to the terms of the Agreement to Arbitrate.

IT IS FURTHER ORDERED that, in lieu of staying the proceedings, this case is dismissed without prejudice to the parties' right to move to re-open this case for entry of an arbitration award or for any other relief to which the parties may be entitled.

IT IS SO ORDERED.


Dated: April 30, 2014                    s/Gerald E. Rosen
                                         Chief Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 30, 2014, by electronic and/or ordinary mail.

                                         s/Julie Owens
                                         Case Manager, (313) 234-5135



**TORRANCE LEE, Plaintiff, v. CREDIT ACCEPTANCE CORPORATION, Defendant.**

**15-cv-614-jdp**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN**

*2015 U.S. Dist. LEXIS 153035*

**November 12, 2015, Decided**
**November 12, 2015, Filed**

**COUNSEL:**  [*1] For Torrance Lee, Plaintiff: Eric Leighton Crandall, LEAD ATTORNEY, Crandall Law Offices, SC, New Richmond, WI.

For Credit Acceptance Corporation, Defendant: David John Hanus, LEAD ATTORNEY, Brett Barry Larsen, Hinshaw & Culbertson, LLP, Milwaukee, WI.

**JUDGES:** JAMES D. PETERSON, District Judge.

**OPINION BY:** JAMES D. PETERSON

**OPINION**

**ORDER**

Plaintiff Torrance Lee purchased a car in March 2014, and he agreed to pay for it through monthly installments to defendant Credit Acceptance Corporation. About a week after the sale, the dealership informed Lee that the transaction had been cancelled and that he needed to return the car. Lee complied. But despite the cancelled transaction, Credit Acceptance continued to bill him for monthly payments. Lee filed suit in small claims court for Saint Croix County, Wisconsin, alleging violations of the Equal Credit Opportunity Act, *15 U.S.C. § 1691 et seq.*, and the Wisconsin Consumer Act, *Wis. Stat. § 421.101 et seq.* Credit Acceptance removed the case to this court and now seeks to compel arbitration based on provisions in the retail installment contract that Lee signed when he purchased the car. Dkt. 7. Lee opposes the motion and demands a jury trial on the issue of "the making of the arbitration agreement." Dkt. 13. Lee has produced a [*2] different version of the contract, under which he contends that he can avoid arbitration by suing in small claims court.

A trial is unnecessary because Lee does not dispute that Credit Acceptance's version of the contract bears his signature. And even if Lee's version controls the parties' dispute in this case, he has not persuasively demonstrated that he can avoid arbitration under that agreement. The court will therefore grant Credit Acceptance's motion.

ALLEGATIONS OF FACT

"Motions to compel arbitration are reviewed under a summary judgment standard as set forth in *Federal Rules of Civil Procedure 56(c).*" *Tickanen v. Harris & Harris, Ltd., 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006)* (internal citations and quotation marks omitted); *see also Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002).* The court may therefore consider all evidence in the record, but it will construe disputes of fact in Lee's favor because he is the non-moving party. *Tickanen, 461 F. Supp. 2d at 866.*

Lee resides in Saint Croix County, Wisconsin, not far from the state border with Minnesota. On March 31, 2014, Lee visited Inver Grove Auto, a car dealership in Minnesota. Lee purchased a car that day and drove it home. To finance the purchase, Lee entered into a retail installment contract, agreeing to make 60 monthly payments of just over $380. The contract contained an assignment clause, indicating that the [*3] dealership would assign its rights to Credit Acceptance, as well as its interest in the car. The contract also contained an arbitration provision, which Lee had the right to reject by mailing a written notice to Credit Acceptance within 30 days. Lee did not reject the arbitration provision.

2:16-cv-13144-MFL-SDD    Doc # 12    Filed 10/06/16    Pg 65 of 66    Pg ID 93

Page 2
2015 U.S. Dist. LEXIS 153035, *

About a week later, the dealership contacted Lee by phone and told him that the transaction had been cancelled. At this point, it is not clear why the transaction was cancelled, but that fact appears to be immaterial. The dealership demanded that Lee return the car, which he did on April 7, 2014. The dealership returned Lee's down payment. The following week, Lee received a letter from Credit Acceptance explaining that the retail installment contract had been "re-assigned" back to the dealership.

Even though the transaction had been cancelled and Lee had returned the car, Credit Acceptance continued to dun him. Credit Acceptance made several collection calls to Lee, and in June 2014, the company sent him a "notice of right to cure default," which accused him of defaulting on the retail installment contract.

Lee filed suit in small claims court, alleging violations of the Equal Credit Opportunity Act [*4] and the Wisconsin Consumer Act. Dkt. 1-2. Credit Acceptance timely removed the case to this court and moved to compel arbitration. Dkt. 1 and Dkt. 7. Lee responded by challenging the authenticity of the retail installment contract that Credit Acceptance submitted with its motion, and he demanded a trial on the issue of "the making of the arbitration agreement." Dkt. 12 and Dkt. 13. With his motion, Lee submitted a different retail installment contract; one that he contends is the *actual* agreement that he signed.

The court has subject matter jurisdiction over this case pursuant to *28 U.S.C. § 1331* because Lee's complaint arises under federal law, and because Credit Acceptance properly removed the case to this court under *28 U.S.C. § 1441*. The court has supplemental jurisdiction over Lee's state law claims pursuant to *28 U.S.C. § 1367*.

ANALYSIS

Under the Federal Arbitration Act, courts will compel arbitration if three conditions are present: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *9 U.S.C. § 4*; *Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 687 (7th Cir. 2005)*. There is a strong federal policy favoring arbitration, and "once it is clear the parties have a contract that provides for arbitration of some issues between them, [*5] any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume, 139 F.3d 1130, 1136 (7th Cir. 1998)*. Here, Lee acknowledges that his signature appears on the contract that Credit Acceptance has submitted in support of its motion to compel arbitration, Dkt. 16, ¶ 11, and his brief appears to concede that the contract requires arbitration in this case, *see generally*

Dkt. 12. But Lee contends that this is not the same contract that he signed when he purchased the car.

Lee has submitted an unsigned version of a contract the he entered into at the dealership. Dkt. 16-6.[1] He observes that some of the financial terms (e.g., purchase price, sales tax, fees to public officials) in his version are different from the terms in Credit Acceptance's version, and that he does not remember signing a version with a barcode on top, which Credit Acceptance's version has. Credit Acceptance responds that these are merely minor differences in appearance, and that the total amount financed is the same in both contracts, as are the interest rates and payment schedules. Ultimately, the court does not need to resolve the apparent discrepancies between the contracts because regardless of which version controls, Lee [*6] cannot avoid arbitration.

1    The dealership made copies of the contract before Lee signed them. Dkt. 16, ¶ 8.

Lee contends that his version of the contract "allows him to avoid arbitration" by filing an action in small claims court, which he did in this case. Dkt. 12, at 5. Lee relies on the following language in his version of the contract to support his contention:

You or we can do the following without giving up the right to require arbitration:

o  Seek remedies in small claims court for Claims within the small claims court's jurisdiction.

Dkt. 16-6, at 4.

Lee's suggestion that this provision allows him to preempt arbitration is simply incorrect. Under Minnesota law, "[a]bsent ambiguity, [the court] construe[s] contract terms consistent with their plain, ordinary, and popular sense, so as to give effect to the intention of the parties as it appears from the entire contract."[2] *Quade v. Secura Ins., 814 N.W.2d 703, 705 (Minn. 2012)* (internal citations and quotation marks omitted). The language therefore means exactly what it says: any party can seek remedies in small claims court without giving up the right to require arbitration. Put differently, if Lee sued in small claims court and later determined that he preferred arbitration, then he could switch forums because [*7] he never lost the right to arbitrate. But if Lee sued in state or federal trial court, then he would have to remain in that forum because he gave up his right to arbitrate. Lee does

not explain how--nor does the court agree that--the provision alters or trumps Credit Acceptance's right to arbitrate. Indeed, the provision is silent with regard to how one party's choice of forum affects the *other* party's right to arbitrate. Thus, even if Lee's version of the contract controls, it does not allow him to avoid arbitration by filing suit in small claims court.

> 2    The parties do not dispute that Minnesota law governs both versions of the contract. *See* Dkt. 9-1, at 4 and Dkt. 16-6, at 3.

Notwithstanding Lee's concern over why his version of the contract differs from Credit Acceptance's version, this is a straightforward case. First, Lee's version and Credit Acceptance's version both contain arbitration provisions, so there is a written agreement to arbitrate. Second, regardless of which version controls, the parties' dispute falls within the scope of their agreement to arbitrate. Third, Lee has refused to arbitrate. These are the three prerequisites for compelling arbitration, and they are present [*8] in this case. The court will therefore grant Credit Acceptance's motion.

ORDER

IT IS ORDERED that:

1. Defendant Credit Acceptance Corporation's motion to compel arbitration, Dkt. 7, is GRANTED.

**2**. This case is STAYED, pending the outcome of arbitration proceedings. Because the arbitration may resolve all of the issues between the parties and make any further proceedings in this court unnecessary, the clerk of court is directed to close the case administratively. If arbitration does not resolve all of the issues, then either party may move the court to reopen the case.

Entered November 12, 2015.

BY THE COURT:

/s/ JAMES D. PETERSON

District Judge