UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA RAJAPAKSE,                          Case No. 16-13144

             Plaintiff,                  Matthew F. Leitman
v.                                           United States District Judge

CREDIT ACCEPTANCE CORPORATION,               Stephanie Dawkins Davis
                                             United States Magistrate Judge
             Defendants.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION TO COMPEL ARBITRATION (Dkt. 12)**
**and PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF**
**AND SUMMARY JUDGMENT (Dkt. 15, 22)**

## I.   PROCEDURAL HISTORY

Plaintiff, Samantha Rajapakse, filed a *pro se* complaint on August 29, 2016, asserting claims under the Fair Debt Collection Practices Act (FDCPA) and the Michigan Consumer Protection Act (MCPA) against Credit Acceptance Corporation (CAC). (Dkt. 1). On September 13, 2016, District Judge Matthew F. Leitman referred all pretrial matters to the undersigned. (Dkt. 7). On October 6, 2016, CAC filed a motion to compel arbitration, to dismiss, or, in the alternative to stay proceedings. (DKt. 12). Plaintiff filed her response on November 29, 2016 (Dkt. 19). On October 25, 2016, plaintiff filed a motion for injunctive relief. (Dkt. 15). CAC filed a response on November 15, 2016. (Dkt. 18). Plaintiff also

filed a motion for summary judgment on July 10, 2017, to which no response has

yet been filed.  (Dkt. 22).  These matters are now ready for report and

recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendant's motion to compel arbitration be **GRANTED**, that this matter be

**DISMISSED WITHOUT PREJUDICE**, that the request for stay be **DENIED**,

and that plaintiff's motions for injunctive relief and for summary judgment be

**TERMINATED** as moot.[1]

## II.    FACTUAL BACKGROUND

On January 7, 2014, plaintiff entered into a Retail Installment Contract

(RIC) with 1 Stop Auto Sales (the Dealership) for the purchase of a 2007

Chevrolet Trailblazer.  (Dkt. 12, Ex. A - Affidavit of Kimberly Cavazos, Pg ID 61-

63).  Pursuant to the RIC, plaintiff was to make 48 monthly installment payments

of $361.13.  (Dkt. 12, Ex. A-1, Pg ID 64).  The RIC was assigned to Credit

Acceptance, who is explicitly designated as "Assignee" therein.  *Id*. at Pg ID 65.

The RIC provides, in pertinent part, as follows:

> NOTICE OF ASSIGNMENT: The Seller has assigned
> this Contract to Credit Acceptance Corporation in

---

[1]  To the extent that the Court believes that non-party Marcus Mays' petition to seek to file a claim and become a plaintiff in this matter needs to be addressed, this too should be denied as moot, given that plaintiff's claims must be arbitrated and there will be no pending matter in which Mr. Mays could intervene.  (Dkt. 20).

accordance with the terms and conditions set forth on page 4 of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD - SUITE 3000, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

*Id*.

The first page of the RIC contains two notices advising plaintiff to read the entire RIC, both of which point to the Agreement to Arbitrate. *Id*. at Pg ID 64.

These two notices provide:

> **ARBITRATION NOTICE:** PLEASE SEE PAGE 4 OF THIS CONTRACT FOR INFORMATION REGARDING THE **AGREEMENT TO ARBITRATE** CONTAINED IN THIS CONTRACT.
>
> **ADDITIONAL TERMS AND CONDITIONS**: THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING **THE AGREEMENT TO ARBITRATE** SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

*Id*. (emphasis in original). Below these notices is the following language:

> NOTICE TO BUYER: 1. Do not sign this Contract in blank. 2. You are entitled to 1 true copy of the Contract You sign without charge. 3. Keep it to protect Your legal rights.

*Id*. Plaintiff's signature is directly below this notice. *Id*. Also, below the aforementioned notice and plaintiff's signature is the following language:

3

> You agree to the terms of this Contract and acknowledge
> that You have received a copy of this Contract with all
> blanks filled in and that You have read it and understand
> it.

*Id*.

The Agreement to Arbitrate sets forth the terms for the resolution of

"Disputes" between plaintiff and CAC, and provides, in pertinent part, as follows:

> A "Dispute" is any controversy or claim between You
> and us arising out of or in any way related to this
> Contract, including, but not limited to, any default under
> this Contract, the collection of amounts due under this
> Contract, the purchase, sale, delivery, set-up, quality of
> the Vehicle, advertising for the Vehicle or its financing,
> or any product or service included in this Contract.
> "Dispute" shall have the broadest meaning possible, and
> includes contract claims, and claims based in tort,
> violations of laws, statutes, ordinances or regulations or
> any other legal or equitable theories.
>                              * * *
> Either You or we may require any Dispute to be
> arbitrated and may do so before or after a lawsuit has
> been started over the Dispute or with respect to other
> Disputes or counterclaims brought later in the lawsuit. ...
> A Dispute shall be fully resolved by binding arbitration.
> If You or We elect to arbitrate a Dispute, neither You nor
> We will have the right to pursue that Dispute in court or
> have a jury resolve that dispute.
>                              * * *
> This Agreement to Arbitrate is governed by the FAA and
> not by any state arbitration law.

*Id*. at Pg ID 67-68.

The Agreement to Arbitrate also contains two other important provisions,

4

First, the arbitration will take place near the place where the RIC was entered into

(i.e., "[a]rbitration will take place near where You signed this Contract") and not

necessarily in Southfield, Michigan where CAC headquarters are located.  *Id*.

Second, plaintiff had the absolute right to reject the Agreement to Arbitrate, with

absolutely no consequence to the remaining terms of the RIC.  Specifically, the

Agreement to Arbitrate provides:

> Your Right to Reject: If You don't want this Arbitration
> Clause to apply, You may reject it by mailing Us at P.O.
> Box 5070, Southfield, Michigan 48086-5070 a written
> rejection notice that describes the Contract and tells Us
> that You are rejecting this Arbitration Clause. A
> rejection notice is only effective if it is signed by all
> buyers, co-buyers and cosigners and the envelope that
> the rejection notice is sent in has a post mark of 30 days
> or less after the date of this Contract.  If You reject this
> Arbitration Clause, that will not affect any other
> provision of this Contract or the status of Your Contract.
> If You don't reject this Arbitration Clause, it will be
> effective as of the date of this Contract.

*Id*.  According to CAC, plaintiff did not exercise this right to reject the Agreement

to Arbitrate, as CAC did not receive any such notice from plaintiff.  (Dkt. 12, Ex.

A, Cavazos Affidavit).  Thus, CAC now seeks to enforce its express contractual

right to compel arbitration.

Plaintiff argues that the arbitration clause does not apply in the instance of a

breach of contract, breach of trust and plaintiff's good faith reliance.  She also

appears to contend that claims under the FDCPA are not subject to arbitration

under the agreement.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

The Federal Arbitration Act provides that a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  A party seeking to enforce an arbitration agreement may request that litigation be stayed until the terms of the arbitration agreement have been fulfilled.  *Id*. § 3.  On such application, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id*. § 4.

Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable."  *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).  Such review requires the Court to determine (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of the agreement." *Id*. (quoting *Javitch*, 315 F.3d at 624).  With respect to the arbitration agreement's

6

validity, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks and citations omitted). With respect to the agreement's scope, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citations and quotation marks omitted). In other words, keeping in mind the "strong federal policy in favor of arbitration ... any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration," *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), especially when the arbitration clause is written broadly to encompass all claims arising under the contract, *AT&T Techs.*, 475 U.S. at 650.

B.   Legal Analysis

The court must make "a number of threshold determinations before compelling arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). Specifically, the court must determine: (1) whether the parties agreed to arbitration; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable;

and (4) whether to stay the remainder of the proceedings pending arbitration if it concludes that some, but not all, of the claims in the action are subject to arbitration. *Id.*; *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005).

Here, the parties plainly agreed to arbitrate. Plaintiff and 1 Stop Auto signed the retail installment contract containing the arbitration clause. (Dkt. 12, Pg ID 65). Plaintiff did not exercise her right to reject the arbitration clause under the contract, which would not have affected the balance of the agreement. *Id.* Notably, other courts have enforced similar, if not identical, arbitration clauses over a variety of objections, including unconscionability. *See e.g.*, *West v. Legacy Motors*, 2016 WL 6476458 (E.D. Mich. 2016) (Cleland, J.); *Williams v. Champs Auto Sales*, 2014 WL 6886546 (E.D. Mich. 2014) (Leitman, J.); *Garcia v. Weltman, Weinberg & Reis Co. of Michigan*, 2014 WL 1746522 (E.D. Mich. 2014) (Rosen, C.J.). As Judge Cleland observed in *West*, analyzing a similar arbitration agreement, the "power to arbitrate or sue is held entirely in the hands of the purchaser. The court finds nothing unfair or inequitable about such a clause, and concludes that the instant arbitration clause is enforceable." *Id.* at *2.

And, just as in *West*, *Williams*, and *Garcia*, the scope of the arbitration agreement here is quite broad. The arbitration clause provides for arbitration of "any Dispute," and provides that "'Dispute' shall have the broadest meaning

8

possible, and includes contract claims, and claims based on tort, violations of

laws, statutes, ordinances or regulations or any other legal or equitable theories."

(Dkt. 12, Pg ID 67-68).  The language of the arbitration agreement plainly

encompasses a broad swathe of potential claims in its scope.

Next, nothing suggests that Congress intended to exempt plaintiff's FDCPA

claim from arbitration.[2]  "The burden is on the party opposing arbitration...to show

that Congress intended to preclude a waiver of judicial remedies for the statutory

rights at issue."  *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

As observed by Judge Rosen in *Garcia*, there is no evidence that "Congress

intended FDCPA claims to be nonarbitrable and has therefore not satisfied her

burden."  *Id*. at *4 (citing *Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861

F.Supp.2d 724, 730 (E.D. Va. 2012) ("[T]here is no reason to believe ... that

Congress meant to preclude arbitration in the circumstances of the case [involving

a FDCPA claim].");  *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F.Supp.2d

827, 831 (S.D. Ohio 2008) ("Congress did not intend FDCPA claims to be

non-arbitrable. Courts routinely permit arbitration of such claims.").  Thus,

---

[2] Plaintiff's complaint is primarily predicated on the FDCPA.  She mentions the MCPA in her complaint, but does not discuss that claim in her response to the motion to compel arbitration.  Rather, she briefly mentions Tenn. Code 47-2-316, but has not asserted any claim under this statutory provision in her complaint.  Thus, this statutory provision need not be addressed further.  Assuming plaintiff wishes to maintain her MCPA claim, it permissibly falls within the scope of the broad arbitration provision in this case.  *See e.g.*, *West v. Legacy Motors* at *3 (all of plaintiff's claims, including her MCPA claim, fell within the scope of the agreement's broad arbitration provision).

plaintiff's argument that the FDCPA somehow falls outside the scope of the arbitration provision in the parties' contract is without merit.

The undersigned further concludes that CAC is entitled to dismissal rather than merely a stay of this litigation.  It is true that where claims are referred to arbitration, the FAA provides for a stay of the court proceedings "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  However, in cases, such as the present one, where all of a party's claims are subject to arbitration, courts may properly dismiss the complaint.  *See Arnold v. Arnold Corp.–Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); *see also Ozormoor v. T-Mobile USA, Inc.*, 354 Fed. Appx. 972, 975 (6th Cir. 2009) (rejecting the argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them).  Indeed, "[t]he weight of authority clearly supports the dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).  "Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." *Gilchrist v. Inpatient Med. Servs., Inc.*, 2010 WL 3326742, at \*5 (N.D. Ohio Aug. 23, 2010) (quoting *Nestle Waters N. Am., Inc. v.*

*Bollman*, 2006 WL 3690804 , at *6 (W.D. Mich. Dec. 12, 2006), *aff'd*, 505 F.3d 498 (6th Cir. 2007)); *see also McGill v. Meijer, Inc.*, 2011 WL 1166895, at *4 (W.D. Mich. Mar. 28, 2011) (where arbitration is compelled as to all claims, dismissal for lack of jurisdiction is appropriate, and because this dismissal is not on the merits, it will be without prejudice) (citing *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp.2d 375, 388 (E.D. Ky. 2006)).  Given that all of plaintiff's claims are subject to final and binding arbitration, the undersigned recommends that this case should be dismissed without prejudice.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion to compel arbitration be **GRANTED**, that this matter be **DISMISSED WITHOUT PREJUDICE**, that the request for stay be **DENIED**, and that plaintiff's motions for injunctive relief and summary judgment be **TERMINATED** as moot.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: July 28, 2017                              s/Stephanie Dawkins Davis
                                                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>July 28, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by U.S. Postal Service to the following non-ECF participant: <u>Samantha Rajapakse, P.O. Box 21053, Chattanooga, TN 37424.</u>

<div style="margin-left: 40%;">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>